UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS
ANNUITY FUND, NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS APPRENTICESHIP,
JOURNEYMAN RESTRAINING, EDUCATIONAL          File No. 08 CIV 3748
AND INDUSTRY FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS CHARITY        Assigned to
FUND, and THE NEW YORK CITY AND VICINITY      Judge Alvin K. Hellerstein
CARPENTERS LABOR-MANAGEMENT
CORPORATION, By MICHAEL J. FORDE and
PAUL O'BRIEN, as TRUSTEES, and MICHAEL J.
FORDE AS EXECUTIVE SECRETARY-TREASURER,
DISTRICT COUNCIL FOR NEW YORK CITY AND
VICINITY, UNITED BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA,

                                   Plaintiffs,

    -against-

THREE GUYS FLOOR COVERING WORKROOM, INC.,

                                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


# DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................... 1

STATEMENT OF FACTS ............................................................................. 2

POINT I
THE ARBITRATOR'S AWARD MANIFESTLY DISREGARDED
THE LAW AND FACTS IN THIS MATTER ............................................. 3

POINT II
THE VACATUR OF THE ARBITRATION AWARD IS JUSTIFIED
UNDER THE "ESSENCE OF THE AGREEMENT" DOCTRINE ........... 9

CONCLUSION ............................................................................................ 11

i

## **PRELIMINARY STATEMENT**

Defendant's Memorandum of Law is submitted in support of its motion to vacate

the Arbitration Award in this matter by Arbitrator Robert Herzog, Esq. dated February 4,

2008 (annexed hereto and made a part hereof and marked Exhibit "A" is a copy of the

Arbitration Award) upon the grounds that the Arbitrator manifestly disregarded the law and

facts in this matter and issued an award that was contrary to the essence of the Collective

Bargaining Agreement (hereinafter referred to as "CBA") dated July 1, 2001. The instant

action was commenced by the above-captioned plaintiff on or about April 21, 2008 by the

filing of a Summons and Complaint seeking a Judgment of this Court confirming the

Arbitration Award issued in favor of the plaintiff by Arbitrator Robert Herzog, Esq. dated

February 4, 2008. (Annexed hereto and made a part hereof and marked Exhibit "B" is a

copy of the Summons and Complaint herein.)

On or about May 1, 2008, simultaneously with the service of this motion, defendant

interposed an Answer including Affirmative Defenses, and two (2) Counterclaims to

vacate the Arbitration Award herein. (Annexed hereto and made a part hereof and marked

as Exhibit "C" is a copy of the Answer including Affirmative Defenses and

Counterclaims.)

It is the defendant's contention herein that the Arbitration Award issued on February

4, 2008 should be vacated by this Court upon the grounds that the Arbitrator "manifestly

disregarded the law and facts in this matter" and that his award "does not reflect the

essence of the CBA" and should be vacated. (Annexed hereto and made a part hereof and

marked as Exhibit "D" is a copy of the Collective Bargaining Agreement dated July 1, 2001.)

## STATEMENT OF FACTS

Defendant, THREE GUYS FLOOR COVERING WORKROOM, INC. (hereinafter referred to as "THREE GUYS") is a floor covering contractor which was a signatory to a CBA which covered the period July 1, 2001 through June 30, 2006.

On or about May 17, 2007, the New York District Council of Carpenters Benefits Funds (hereinafter referred to as the "Fund" and/or plaintiff) served two (2) Notices of Intention to Arbitrate alleging that the Fund was entitled to delinquent fringe benefit contributions for the period July 1, 2002 through November 11, 2004 in the sum of $100,038.22 and for the period November 12, 2004 through July 6, 2006 in the sum of $65,079.86. Thereafter, on or about August 20, 2007, the Fund amended its final audit report to seek $25,722.79 for the period July 1, 2002 through November 11, 2004 and $14,238.52 for the period November 12, 2004 through July 7, 2006.

Then, on or about October 18, 2007, the Fund, once again, amended its final "Audit Report" now seeking $90,829.14 for the period July 1, 2002 through November 11, 2004 and $58,150.99 for the period November 11, 2004 through July 7, 2006.

It is undisputed that the parties were bound by the CBA entitled the "Independent Resilient Floor Coverers Agreement" between defendant and the Fund. The Agreement covered the period July 1, 2001 through June 30, 2006. (See Exhibit "D") The Fund

2

alleges that the defendant failed to make sufficient benefit contributions to the Fund for the

period of July 1, 2002 through November 11, 2004 and November 12, 2004 through July 6,

2006 as required by the CBA. The Fund claimed that the two (2) principals of defendant,

Salvatore Piccarello and Robert Gonzales, were required to contribute benefit payments

based upon a minimum of twenty-eight (28) hours per week.

The Arbitration took place on October 2, 2007 and December 10, 2007 at the offices

of the Fund. Prior to the conclusion of the Arbitration proceeding, Respondents submitted

a Memorandum of Law in support of its application to dismiss the Arbitration based upon

the facts presented at the Arbitration Hearing. (Annexed hereto and made a part hereof and

marked Exhibit "E" is a copy of defendant's Memorandum of Law in Support of its

Application to Dismiss the Arbitration.)

On or about February 4, 2008, Arbitrator Robert Herzog, Esq. issued an Opinion

and Award finding that defendant was delinquent in its fringe benefits payment due and

owing to the Fund under the CBA and awarding the Fund a total of $60,197.15 with

interest to accrue at a rate of ten (10%) percent from the date of the award. (See Exhibit

"A")

## POINT I

### THE ARBITRATOR'S AWARD MANIFESTLY
### DISREGARDED THE LAW AND FACTS IN THIS MATTER

The position taken by the Fund at the Arbitration was that Salvatore Piccarello and

Robert Gonzalez, as principals of THREE GUYS, were required to make contributions to

3

the Fund for a minimum of twenty-eight (28) hours of work per week whether or not they

actually worked those hours or not.  In support of this position, the Fund submitted in

evidence two (2) Member-Employer Addendums, each providing that pursuant to the CBA

which predated the July 1, 2001 CBA in issue (the March 10, 1993 CBA), reflecting that

Salvatore Piccarello and Robert Gonzales, as Officers and Directors of defendant, agreed

that they would be deemed employees within the terms of the CBA in order to qualify for

fringe benefits funds, and would pay weekly contributions of a minimum of twenty-eight

(28) hours per week to the Fund.  (Annexed hereto and made a part hereof and marked

Exhibit  "F" are copies of the March 10, 1993 Member-Employer Addendums.)  However,

these Member-Employer Addendums solely applied to the CBA dated March 10, 1993 and

not to *the CBA at issue which covered the period between July 1, 2001 and July 30, 2006.*

(See Exhibit "D")  The Fund has admitted that no Member-Employer Addendum was

signed by Salvatore Piccarello or Robert Gonzales for the July 1, 2001 CBA.  Additionally,

a review of the CBA in issue reveals that there is no language in that Agreement requiring

a minimum of twenty-eight (28) hours per week of contributions to the Fund by the

principals of the employer signatories.  (See Exhibit "D")

Indeed, in two (2) letters sent to its Contributing Employers, one dated August 24,

2006 and the other dated August 6, 2007, the Fund indicated that its policy regarding

benefit contributions for principals, effective September 1, 2006, was that principals

(owners) who are Union Members and had executed a Member-Employer Participation

4

Agreement with Funds would <u>now</u> be required to contribute a minimum of twenty-eight (28) hours per week in benefits in order to be eligible to participate in the Benefits Funds. (Annexed hereto and made a part hereof and marked Exhibit "G" is a copy of said letters from the Fund dated August 24, 2006 and August 6, 2007.)

Deponent made the argument to the Arbitrator that reasonable contract interpretation based on the documents presented in this Arbitration clearly revealed that (a) the Member-Employer Addendums signed relating to the March 10, 1993 CBA applied only to that Agreement since a new CBA was executed on or about July 1, 2001; (b) that no Member-Employer Addendum was signed by Salvatore Piccarello or Robert Gonzalez in connection with the July 1, 2001 CBA; and (c) that the Fund, in writing and by its own admission, did not institute the minimum required twenty-eight (28) hours per week contribution until an effective date of September 1, 2006, sixty (60) days after the expiration of the July 1, 2001 CBA.

Additionally, the Fund had conducted audits of the defendant for the period January 1, 2000 through June 30, 2001, and then from July 1, 2001 through June 30, 2002 which audits revealed that there was no requirement for the twenty-eight (28) hour minimum contribution and that negligible arrears were due from defendant. (Annexed hereto and made a part hereof and marked Exhibit "H" is a copy of said Audits from the Fund for the period January 1, 2000 through June 30, 2001 and July 1, 2001 through June 30, 2001.)

New York contract law is clear that when parties to a contract enter into a

5

subsequent agreement, there is a presumption that the prior agreement has terminated and

the specific terms of the prior agreement are, therefore, no longer binding on the parties.

(See e.g., Sutherland v. Connecticut Mut. L. Ins. Co., 87 Misc. 383, 149 N.Y.S. 1008 (Sup.

Ct. 1914)  (*Held:  The terms of a subsequent agreement by the parties will not be strewn*

*together with the terms of the former agreements as one continuing agreement, but rather,*

*by the creation of the new agreement, all other agreements are deemed terminated unless*

*explicitly stated in the new agreement.*)

As a general rule, the terms of each independent agreement are to remain "separate

unless the history and the subject matter show them to be unified."  National Union Fire

Ins. Co. of Pittsburgh, PA v. Williams, 223 App. Div.2d 395, 396, 637 N.Y.S.2d 36 (1st

Dept. 1996) *(Held:  Promissory note and indemnification agreement executed*

*contemporaneously between investor and insurer were separate instruments and could not*

*be read together to establish jurisdiction in the selected form.)*  Thus, the terms of a prior

agreement may only be resurrected as part of the subsequent agreement where there is

explicit reference thereto in the subsequent agreement or where the party seeking

enforcement of the former terms in the subsequent agreement produces conclusive,

admissible evidence of defendant's intent to be bound by the terms of the prior agreement.

(See  Sutherland, supra, 87 Misc. at 386)

Where the parties have entered into multiple agreements, the terms of those

agreements are to be read separate and apart from one another, and, under no interpretation

6

of contract law can it be said that entering into a subsequent contract resulted in the *automatic* renewal of or accession to the terms of an earlier agreement. (See <u>Sutherland</u>, <u>supra</u>)

There is no language in the July 1, 2001 CBA incorporating the terms of the prior CBA dated March 10, 1993. (See Exhibit "D") The Arbitrator had knowledge of the fact that the July 1, 2001 CBA had no language requiring a minimum of twenty-eight (28) hours per week contribution for principals of an employer and was also fully aware of the August 24, 2006 and August 6, 2007 letters from the Fund advising the Contributing Employers that the twenty-eight (28) hour minimum requirement would become effective on or after September 1, 2006. (See Exhibit "F") It is only reasonable to assume that if the effective date of the twenty-eight (28) hour minimum contribution was September 1, 2006, that prior to that time no twenty-eight (28) minimum hour contribution existed or was mandated by the CBA. Clearly, during a period during the term of the previous CBA (January 1, 2000 through June 30, 2001), an audit was done by the Fund's auditors which revealed no requirement (See Exhibit "H") that the defendant contribute the minimum twenty-eight (28) hours per principal. Despite acknowledging the above facts and even quoting sections of deponent's Memorandum in Support of its Application to Dismiss the Arbitration (See Exhibit "E"), the Arbitrator determined that because the Employers (Piccarello and Gonzales) had signed the March 10, 1993 Member-Employer Addendum, that they "impliedly agreed" to be bound in perpetuity by this Addendum during the

7

duration of "subsequent collective bargain agreements."

An arbitration award may be vacated if it is rendered in "manifest disregard of the law." Wien & Malkin, LLP v. Helmsley-Spear, Inc., 6 N.Y.3d 471 (2006); Halligan v. Piper Jaffrey, Inc., 148 F.3d 197 (2nd Cir. 1998) "Manifest disregard of law" however, is a severely limited doctrine applied only in extremely rare situations and courts are highly deferential to arbitration awards. Porzig v. Dresner, Kleinwort, Benson, North America, LLC, 497 F.3d 133 (2nd Cir. 2007) The petitioner has a heavy burden and the arbitration award may be vacated only where the petitioner can demonstrate both that: (1) the arbitrator knew of a governing legal principle, yet refused to apply it or ignored it all together and (2) that the law ignored by the arbitrator was well defined, explicit and clearly applicable to the case. Wallace v. Buttar, 378 F.3d 182 (2nd Cir. 2004) It is best described as a "doctrine of last resort" where some egregious impropriety on the part of the arbitrator is apparent. Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383 (2nd Cir. 2003)

In the instant matter, the Arbitrator was well aware that there was no contractual obligation under the July 1, 2001 CBA to hold the defendant liable for benefit contribution arrears under the minimum twenty-eight (28) hour rule. He was also provided with the documentation that the twenty-eight (28) hour rule became effective September 1, 2006, sixty (60) days after the expiration of the subject CBA. His argument that the defendant "impliedly consented in perpetuity" to paying the twenty-eight (28) hour minimum is irrational and unsupported by black letter contract law. Indeed, Courts have held that in

8

order for the doctrine of implied consent to apply, it must be definitively shown that the individual must have actual knowledge and must expressly consent to the obligations under a contract. <u>Backstatter v. Berry Hill Building Corp.</u>, 56 Misc.2d 351, 288 N.Y.S.2d 850 (Sup. Ct. 1968)  No such consent may be implied here since the evidence reflects that the Fund did not charge a minimum of twenty-eight (28) hours per principal during the 2000/2001 audit and as reflected by the August 24, 2006 and August 6, 2007 letters from the Fund, the effective date of the twenty-eight (28) hour rule was September 1, 2006, and no earlier.  Additionally, there is certainly no language, either in the CBA or the Member-Employer Addendums, which permits the Arbitrator to determine that the employers "impliedly consented to be bound in perpetuity" during the duration of subsequent Collective Bargaining Agreements to the terms contained therein.  The Arbitrator fails to even  mention the August 24, 2006 and August 6, 2007 letters in his Award.  It is respectfully submitted that these letters confirm that the Fund only enacted the twenty-eight (28) hour rule on September 1, 2006, and <u>not</u> before.  This is fatal to the Fund's case.   This single determination by the Arbitrator, with full knowledge of the facts and the law in this matter is a classic example of manifest disregard of both the facts and the law.

## POINT II

### THE VACATUR OF THE ARBITRATION AWARD IS<br>JUSTIFIED UNDER THE "ESSENCE OF THE AGREEMENT" DOCTRINE

The "Essence of the Agreement" Doctrine had its origin in the case of <u>United Steel Workers of America v. Enterprise Wheel and Car Corp.</u>, 363 U.S. 593, 80 S.Ct. 1358

9

(1960).  In <u>United Steel Workers of America</u>, 363 U.S. at 597,  <u>supra</u>, Justice William

Douglas stated as follows:

> "Nevertheless, an Arbitrator is confined to interpretation and
> application of the collective bargaining agreement; he does not
> sit to dispense his own brand of industrial justice.  He may of
> course look for guidance from many sources, yet his award is
> legitimate only so long as it draws its essence from the
> collective bargaining agreement.  When the arbitrator's words
> manifest an infidelity to this obligation, courts have no choice
> but to refuse enforcement of the award."

Under the Court's heightened standard of deference, vacatur for manifest disregard of a

commercial contract is appropriate if the arbitral award contradicts an express and

unambiguous term of the contract or if the award so far departs from the terms of the

agreement that it is not even arguably derived from the contract.  <u>Westerbeke Corporation</u>

<u>v. Daihatsu Motor Co., Ltd.</u>, 304 F.3d 200, 222 (2002)  <u>See also Harry Hoffman Printing,</u>

<u>Inc. v. Graphic Communications, Int'l Union,</u> 950 F.2d 95, 98  (2nd Cir. 1991) (vacating

award under "essence of the agreement" doctrine where arbitrator drew on notions of "due

process" rather than on terms of contract); <u>In re Marine Pollution Serv., Inc.</u> 857 F.2d 91,

95 (2nd Cir. 1988) (vacating award under "essence of the agreement" doctrine that went

against express terms of the contract and was based instead on considerations of equity.)

        In this matter, the Arbitrator has not provided even a barely colorable justification

for his interpretation of the contract, and despite being clearly advised of the undisputed

facts and unquestioned law of New York, he issued a decision violating the "essence of the

collective bargaining agreement."  There is no rational justification for t his Arbitrator's

10

decision in the face of all the facts presented and the existing law.

## CONCLUSION

Defendant respectfully submits that the Court, under either the "manifest disregard of law and facts" or "essence of the agreement" doctrines should vacate the Arbitrator's Award herein since the Arbitrator has not provided a barely colorable justification for his interpretation of the contract, despite the fact that the Arbitrator was made aware of the governing principles of law and appreciated that those principles which control the outcome of the disputed issues, but nonetheless willfully flouted the governing law by refusing to apply it.  The Court should vacate the Arbitrator's Award, grant defendant's counterclaim, and dismiss the plaintiff's complaint herein in all respects.

WHEREFORE, defendant respectfully requests that plaintiff's complaint be dismissed in its entirety, that this motion be granted and that the Arbitrator's Award be vacated, plus such other and further relief as may be just proper and equitable.

Dated: Garden City, New York
        May 1, 2008

Yours, etc.

WEINSTEIN, KAPLAN & COHEN, P.C.
Attorneys for Defendant

By: _____
    ROBERT N. COHEN (RC8274)
    1325 Franklin Avenue
    Suite 210
    Garden City, New York 11530
    (516) 877-2525

11

TO:   O'DWYER & BERNSTIEN, LLP
       ATTENTION: ANDREW GRABOIS, ESQ.  (AG3192)
       Attorneys for Plaintiffs
       52 Duane Street
       New York, New York 10007
       (212) 571-7100