UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS
ANNUITY FUND, NEW YORK CITY DISTRICT          **AFFIDAVIT IN SUPPORT**
COUNCIL OF CARPENTERS APPRENTICESHIP,
JOURNEYMAN RESTRAINING, EDUCATIONAL            File No. 08 CIV 3748
AND INDUSTRY FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS CHARITY          Assigned to
FUND, and THE NEW YORK CITY AND VICINITY        Judge Alvin K. Hellerstein
CARPENTERS LABOR-MANAGEMENT
CORPORATION, By MICHAEL J. FORDE and
PAUL O'BRIEN, as TRUSTEES, and MICHAEL J.
FORDE AS EXECUTIVE SECRETARY-TREASURER,
DISTRICT COUNCIL FOR NEW YORK CITY AND
VICINITY, UNITED BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA,

                                             Plaintiffs,

        -against-

THREE GUYS FLOOR COVERING WORKROOM, INC.,

                                             Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK)
                                    SS.:
COUNTY OF NASSAU )

        ROBERT GONZALEZ, being duly sworn, deposes and says:

        1.        Deponent is the Vice President and Secretary of THREE GUYS FLOOR

COVERING WORKMAN, INC. (hereinafter referred to as "THREE GUYS"), defendant

in the above-captioned matter, and makes this Affidavit in Support of defendant's Motion

to Vacate the Arbitration Award issued on February 4, 2008 by Arbitrator Robert Herzog, Esq.

2.      Deponent is a fifty percent (50%) shareholder in defendant's corporation.

3.      THREE GUYS is a floor covering contractor located in the City of New York.

4.      On or about March 10, 1993, deponent, as President of THREE GUYS, signed a Member-Employer Addendum, which document is annexed as Exhibit "F" hereto and which Addendum was related to a Collective Bargaining Agreement signed on March 10, 1993 between the plaintiff, NEW YORK CITY DISTRICT COUNCIL OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, and defendant, THREE GUYS.

5.      A new Collective Bargaining Agreement was signed by the undersigned on or about July 1, 2001.  (See Exhibit "D" annexed hereto.)  Deponent did not sign an additional Member-Employer Addendum to the July 1, 2001 Agreement.

6.      There is no mention of a minimum amount of hours per week to be allocated to principals of an employer under the Collective Bargaining Agreement in the 2001 CBA.

7.      That the plaintiff conducted audits for the period 1/1/00 through 6/30/01 and 7/1/01 through 6/30/02, and despite the fact that deponent and his co-shareholder, SALVATORE PICCARILLO, the two (2) principals of THREE GUYS, each did not pay benefit charges for a total of twenty-eight (28) hours each week for benefits, the audit reflected that negligible monies were due for the aforesaid period under the previous CBA (which time period was covered by the Member-Employee Addendum dated March 10,

1993) and the CBA in issue. (See Exhibit "H" annexed hereto.)

8.    That deponent received two (2) letters from the plaintiff which have been marked as Exhibit "G" annexed hereto, which stated that the minimum requirement of reporting twenty-eight (28) hours per week for principals of any employer who was a signatory under the CBA would be effective on or after September 1, 2006, sixty (60) days after the expiration of the subject CBA herein.

9.    That all of the above information was presented to the Arbitrator in this matter, Robert Herzog, Esq., either by way of testimony or by exhibits, at the Arbitration Hearings held on October 2, 2007 and December 10, 2007.

10.    That there is no provision in the CBA dated July 1, 2001 which incorporates the prior provisions of any CBA previously executed by the parties.

11.    That despite the ruling of the Arbitrator regarding any implied consent on behalf of the deponent, deponent never agreed, directly or indirectly, orally or in writing, to be bound by the March 10, 1993 Addendum, in perpetuity. That Addendum only related to the CBA dated March 10, 1993, and to no other CBA. The first time deponent was advised that the Fund claimed it was due any money under the CBA was after the August 24, 2006 letter. (See Exhibit "G" annexed hereto.)

WHEREFORE, deponent respectfully requests that defendant's motion be in all respects granted.

ROBERT GONZALEZ

Sworn to before me this
1st day of May, 2008

NOTARY PUBLIC

ROBERT N. COHEN
Notary Public, State of New York
No. 30-4701212
Qualified in Nassau County
Commission Expires July 31, 20___

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS
ANNUITY FUND, NEW YORK CITY DISTRICT            **TABLE OF CONTENTS**
COUNCIL OF CARPENTERS APPRENTICESHIP,
JOURNEYMAN RESTRAINING, EDUCATIONAL              File No. 08 CIV 3748
AND INDUSTRY FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS CHARITY           Assigned to
FUND, and THE NEW YORK CITY AND VICINITY         Judge Alvin K. Hellerstein
CARPENTERS LABOR-MANAGEMENT
CORPORATION, By MICHAEL J. FORDE and
PAUL O'BRIEN, as TRUSTEES, and MICHAEL J.
FORDE AS EXECUTIVE SECRETARY-TREASURER,
DISTRICT COUNCIL FOR NEW YORK CITY AND
VICINITY, UNITED BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA,

                                        Plaintiffs,

        -against-

THREE GUYS FLOOR COVERING WORKROOM, INC.,

                                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

1.      Notice of Motion to Vacate Arbitration Award

2.      Memorandum of Law in Support of Motion to Vacate Arbitration Award

3.      Affidavit of Salvatore Piccarillo

i

4.      Affidavit of Robert Gonzalez

5.      Exhibit A - Opinion and Award

6.      Exhibit B - Summons and Complaint

7.      Exhibit C - Answer and Counterclaim

8.      Exhibit D - Collective Bargaining Agreement

9.      Exhibit E - Respondent's Memorandum of Law in Support of its Application to Dismiss the Arbitration

10.     Exhibit F - Member-Employer Addendum

11.     Exhibit G - Letters dated August 24, 2006 and August 6, 2007

12.     Exhibit H - Audits for the periods 1/1/00 through 6/30/01 and 7/1/01 through 6/30/02

# OFFICE OF THE IMPARTIAL ARBITRATOR

-------------------------------------------X
In The Matter Of The Arbitration

       between

New York City District Council of Carpenters
Pension Fund, New York City District Council of
Carpenters Welfare Fund, New York City
District Council of Carpenters Vacation Fund,       **OPINION**
New York City District Council of Carpenters
Annuity Fund, New York City District Council       **AND**
of Carpenters Apprenticeship, Journeyman
Retraining, Educational and Industry Fund,       **AWARD**
New York City District Council of Carpenters
Charity Fund, United Brotherhood of Carpenters
and Joiners of America Fund and The New York
City and Vicinity Carpenters Labor-Management
Corporation, by Michael J. Forde and Paul
O'Brien, as Trustees
              And
Michael J. Forde, as Executive Secretary-
Treasurer, District Council for New York City
and Vicinity, United Brotherhood of Carpenters
and Joiners of America
              (Petitioners)
    -and-

THREE GUYS FLOOR COVERING WORKROOM INC.
              (Employer)
-------------------------------------------X
BEFORE:  Robert Herzog, Esq.

    THREE GUYS FLOOR COVERING WORKROOM INC. (hereinafter referred

to as the "Employer") and the District Council of New York City and

Vicinity of the United Brotherhood of Carpenters and Joiners of

America are parties to an Independent Resilient Floor Coverers

Collective Bargaining Agreement, dated July 1, 2001, providing for

arbitration of disputes before the undersigned Arbitrator as

Impartial Arbitrator, and in which the Employer has therein agreed, for the duration of the Agreement, to pay contributions toward employee benefit funds (hereinafter collectively referred to as the "Funds"). The Petitioners, as beneficiaries of the Collective Bargaining Agreement, have standing before the Arbitrator. In accordance therewith, the Petitioners, by May 17, 2007 Notices of Intention to Arbitrate, demanded arbitration. The Funds alleged the Employer failed to make sufficient benefit contributions to the Funds for the periods of July 1, 2002 through November 11, 2004 and November 12, 2004 through July 6, 2006 as required by the Collective Bargaining Agreement.

Notices of Hearing advised the Employer, Employer Counsel, and the Petitioners that arbitration hearings were scheduled for October 2, 2007 and December 10, 2007.

On October 2, 2007 and December 10, 2007, at the place and times designated by the Notices of Hearing, Steven Kasarda, Esq. appeared on behalf of the Petitioners and Robert Cohen, Esq., of the Law Firm of Weinstein, Kaplan & Cohen, P.C., appeared on behalf of the Employer. Also present at both hearings were Salvatore Piccarillo and Robert Gonzalez, the Employer's President and Vice-President respectively.

The issues to be decided by the Arbitrator are:

1. Is dismissal of the arbitration justified based upon the Funds failure to produce written evidence requiring the Employer to make the contributions set forth in the Amended Final Audit?

2. If not, are Salvatore Piccarillo and Robert Gonzalez subject to the Member-Employer Addendum to the Collective Bargaining Agreement(s)?

3. If so, is the Employer delinquent in its contributions to the Funds for the periods July 1, 2002 through November 11, 2004 and November 12, 2004 through July 6, 2006?

4. If so, what shall be the remedy?

# DISCUSSION

The Employer's President is a signatory to the Collective Bargaining Agreement covering the periods for which the Petitioners seek delinquency payments for the Funds. The Employer and the Union have been parties to prior collective bargainining agreements as a collective bargaining relationship has existed since at least March 1993. A Union form entitled "Collective Bargaining Agreement Preparation Form," dated March 3, 1993, documents interview answers given by the Employer representative to the Union. One entry on the form is "Member/Employer Addendum" and is checked "yes." Another Union form entitled "Administration Form," filled out on or about March 10, 1993, lists Salvatore Piccarillo and Robert Gonzalez as Corporate Officers and Stock Holders. But for their names, both Employer President Piccarillo and Employer Vice President Gonzalez

3

signed identical March 10, 1993 "Member-Employer Addendum" forms. "Member-Employer Addendum" provisions recite an established minimum Fund contribution of twenty-eight (28) hours per week for Messrs. Piccarillo and Gonzalez:

MEMBER-EMPLOYER ADDENDUM                                          F *Rc*

ADDENDUM TO COLLECTIVE BARGAINING AGREEMENT

DATED MARCH 10 1993 _____ BETWEEN THE NEW YORK CITY DISTRICT COUNCIL OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA AND............ NAME OF FIRM THREE GUYS FLOOR COVERING WORKROOM INC. _____

ADDRESS 271 40TH STREET BROOKLYN NY 11232 _____

SALVATORE PICCARILLO _____ and the above-named
member-employer

Corporation hereby represent that SALVATORE PICCARILLO _____ is a (shareholder and/or officer or director) of the Corporation and intends to perform regular work as an "employee", which is within the Jurisdiction of the Union as set forth in the Collective Bargaining Agreement.

SALVATORE PICCARILLO _____ and the Corporation consent and agree that in order to substantiate that SALVATORE PICCARILLO _____ is an "employee" within the terms of the Collective Bargaining Agreement and thereby eligible to qualify as an "employee" with the New York City District Council of Carpenters' Fringe Benefit Funds, the Corporation shall report and pay weekly contributions on his behalf to the Fringe Benefit Funds in a minimum amount representing contributions for twenty-eight (28) hours work (Building Construction) thirty-two (32) hours work (shop) or 32 hours work (Heavy Construction). In the event that SALVATORE PICCARILLO _____ works in excess of the minimum hours per week as an "employee", contributions shall be paid for all additional hours worked in accordance with the Collective Bargaining Agreement.

In the event that the Corporation fails to pay weekly contributions for at least twenty-eight (28) hours work per week (Building Construction), thirty-two (32) hours work per week (shop) or thirty-two (32) hours per week (Heavy Construction)it is consented and agreed that SALVATORE PICCARILLO _____ shall be deemed outside that Collective Bargaining Agreement and not entitled to any benefits from the New York City District Council of Carpenters Fringe Benefit Funds.

The above Addendum is subject to the Constitution and Laws of the United Brotherhood of Carpenters and Joiners of America, Section 44, Article J, must be fully complied with.

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 _____
Social Security Number

THREE GUYS FLOOR COVERING WORKROOM INC.
Name of Firm

X _____
Principal (Title)    *President*

X SALVATORE PICCARILLO
Member-Employer

4

The Employer's position is the signed "Member-Employer Addendum" only applied to the collective bargaining agreement in effect on March 10, 1993 and when the collective bargaining agreement expired, so too did the authorization of the "Member-Employer Addendum" expire:

> **However, these Member-Employer Addendums only apply to the Collective Bargaining Agreements dated March 10, 1993 and November 19, 1993 and not to the Collective Bargaining Agreement ... which covers the period July 1, 2001 through July 30, 2006.**
> **... Reasonable contract interpretation based on the documents presented in this case clearly reveals that ... there was no Member-Employer Addendum signed in connection with the July 1, 2001 contract ....**
>
> [EMPLOYER BRIEF, pages 3 & 4]

By signing the "Member-Employer Addendums" in 1993, Employer President Piccarillo and Vice President Gonzalez were put on notice and acknowledged that, as a "shareholder and/or officer or director" of Three Guys Floor Covering Workroom Inc., contributions of twenty-eight (28) hours per week would have to be submitted to the Funds for them to be Fund participants and be eligible for Fund benefits.

If the Employer's premise were to be accepted, the signed Addendums expired when the "March 10, 1993 and November 19, 1993" collective bargaining agreements expired.  It then follows that Messrs. Piccarillo and Gonzalez's eligibility to participate in Fund benefits also expired which would have been manifested by the Employer no longer submitting contributions to the Funds on Messrs. Piccarillo and Gonzalez's behalf.

The Employer's actions defeat the Employer's argument that the Addendum applied only to the "March 10, 1993 and November 19, 1993"

collective bargaining agreements and not beyond.  The Employer gave

its implied consent to be bound by the Addendums during the duration

of subsequent collective bargaining agreements by continuing to make

contributions to the Funds on Messrs. Piccarillo and Gonzalez's

behalf after the "March 10, 1993 and November 19, 1993" collective

bargaining agreements expired.

> **Implied consent.  That manifested by signs, actions, or facts, or by inaction or silence, which raise a presumption or inference that the consent has been given.  An inference arising from a course of conduct or relationship between the parties, in which a mutual acquiescence or a lack of objection under circumstances signifying assent. ...** [_Black's Law Dictionary, Sixth Edition_, page 305]

Fund Audit Reports reflect that the Employer submitted the

following contributions to the Funds for the weeks indicated:

## CONTRIBUTION HOURS SUBMITTED

| WEEK ENDING | S. PICCARILLO | R. GONZALEZ | WEEK ENDING | S. PICCARILLO | R. GONZALEZ |
|---|---|---|---|---|---|
| 08/01/2002 | | 35 | 04/03 | 21 | 21 |
| 08/08 | | 21 | 04/10 | 21 | 21 |
| 10/03 | 21 | 21 | 05/08 | 21 | 21 |
| 10/10 | 21 | 21 | 05/18 | 21 | 21 |
| 10/17 | 21 | 21 | 05/22 | 21 | 21 |
| 10/24 | 21 | 21 | 05/29 | 21 | 21 |
| 10/31 | 21 | 21 | 06/05 | 21 | 21 |
| 11/07 | 21 | 21 | 06/12 | 21 | |
| 11/14 | 21 | 21 | 06/19 | 21 | |
| 11/21 | 21 | 21 | 07/03 | 21 | 21 |
| 11/27 | 21 | 21 | 07/10 | 21 | 21 |
| 12/04 | 21 | 21 | 07/17 | 21 | 21 |
| 12/19 | 21 | 21 | 07/24 | 21 | 21 |
| 12/26 | 21 | 21 | 07/31 | 21 | 21 |
| 01/02/03 | 21 | 21 | 08/14 | 42 | 42 |
| 01/09 | 21 | 21 | 08/21 | 21 | 21 |
| 01/16 | 21 | 21 | 08/28 | 21 | 21 |
| 01/23 | 21 | | 09/04 | 21 | 21 |
| 01/31 | 21 | | 09/11 | 21 | 21 |
| 02/06 | 21 | 21 | 09/18 | 21 | 21 |
| 02/13 | 21 | 21 | 09/25 | 21 | 21 |
| 02/20 | 21 | 21 | 10/02 | 21 | 21 |
| 02/27 | 21 | 21 | 10/09 | 21 | 21 |
| 03/06 | 21 | 21 | 10/16 | 21 | 21 |
| 03/13 | 21 | 21 | 10/23 | 21 | 21 |
| 03/20 | 21 | 21 | 10/30 | 21 | 21 |
| 03/27 | 21 | 21 | 11/06 | 21 | 21 |

| WEEK ENDING | S. PICCARILLO | R. GONZALEZ | WEEK ENDING | S. PICCARILLO | R. GONZALEZ |
|---|---|---|---|---|---|
| 11/13 | 21 | 21 | 02/17 | 21 | 21 |
| 11/20 | 21 | 21 | 02/24 | 21 | 21 |
| 11/27 | 21 | 21 | 03/03 | 21 | 21 |
| 12/11 | 21 | 21 | 03/10 | 21 | 21 |
| 12/18 | 21 | 21 | 03/17 | 21 | 21 |
| 12/25 | 21 | 21 | 03/24 | 21 | 21 |
| 12/31 | 21 | 21 | 03/31 | 21 | 21 |
| 01/09/04 | 21 | 21 | 04/07 | 21 | 21 |
| 01/15 | 21 | 21 | 04/14 | 21 | 21 |
| 01/22 | 21 | 21 | 04/21 | 21 | 21 |
| 01/29 | 21 | 21 | 05/12 | 21 | 21 |
| 02/05 | 21 | 21 | 05/19 | 21 | 21 |
| 02/12 | 21 | 21 | 05/26 | 21 | 21 |
| 04/08 | 21 | 21 | 06/02 | 21 | 21 |
| 04/15 | 21 | 21 | 06/09 | 21 | 21 |
| 04/22 | 21 | 21 | 06/16 | 21 | 21 |
| 05/06 | 42 | 42 | 06/23 | 21 | 21 |
| 05/13 | 21 | 21 | 06/30 | 21 | 21 |
| 05/20 | 21 | 21 | 07/07 | 28 | 28 |
| 05/27 | 21 | 21 | 07/14 | 21 | 21 |
| 06/03 | 21 | 21 | 07/21 | 21 | 21 |
| 06/10 | 21 | 21 | 07/28 | 21 | 21 |
| 06/17 | 21 | 21 | 08/04 | 21 | 21 |
| 06/24 | 22 | 22 | 08/11 | 21 | 21 |
| 06/30 | 21 | 21 | 08/18 | 21 | 21 |
| 07/08 | 21 | 14 | 08/25 | 21 | 21 |
| 07/15 | 21 | 21 | 09/01 | 21 | 21 |
| 07/22 | 21 | 21 | 09/08 | 21 | 21 |
| 07/29 | 21 | 21 | 09/15 | 21 | 21 |
| 08/05 | 21 | 21 | 09/22 | 21 | 21 |
| 08/12 | 21 | 21 | 09/29 | 21 | 21 |
| 08/19 | 21 | 21 | 10/06 | 21 | 21 |
| 08/26 | 21 | 21 | 10/13 | 21 | 21 |
| 09/02 | 21 | 21 | 10/20 | 21 | 21 |
| 09/09 | 21 | 21 | 10/27 | 21 | 21 |
| 09/16 | 21 | 21 | 11/03 | 21 | 21 |
| 09/23 | 21 | 21 | 11/10 | 28 | 28 |
| 09/30 | 21 | 21 | 11/17 | 21 | 21 |
| 10/07 | 21 | 21 | 11/24 | 21 | 21 |
| 10/14 | 21 | 21 | 12/08 | 21 | 21 |
| 10/21 | 21 | 21 | 12/15 | 21 | 21 |
| 10/28 | 21 | 21 | 12/22 | 21 | 21 |
| 11/04 | 21 | 21 | 12/29 | 21 | 21 |
| 11/11 | 21 | 21 | 01/05/06 | 21 | 21 |
| 11/18 | 21 | 21 | 01/12 | 21 | 21 |
| 11/25 | 21 | 21 | 01/19 | 21 | 21 |
| 12/02 | 21 | 21 | 01/26 | 21 | 21 |
| 12/09 | 22.5 | 22.5 | 02/02 | 21 | 21 |
| 12/16 | 21 | 21 | 02/09 | 21 | 21 |
| 12/23 | 21 | 21 | 02/16 | 21 | 21 |
| 12/30 | 21 | 21 | 02/23 | 21 | 21 |
| 01/06/05 | 21 | 21 | 03/02 | 21 | 21 |
| 01/13 | 21 | 21 | 03/09 | 21 | 21 |
| 01/20 | 21 | 21 | 03/16 | 21 | 21 |
| 01/27 | 21 | 21 | 03/23 | 21 | 21 |
| 02/03 | 21 | 21 | 04/06 | 21 | 21 |
| 02/10 | 21 | 21 | 04/13 | 21 | 21 |

| WEEK ENDING | S. PICCARILLO | R. GONZALEZ | WEEK ENDING | S. PICCARILLO | R. GONZALEZ |
|---|---|---|---|---|---|
| 04/20 | 21 | 21 | 05/25 | 21 | 21 |
| 04/27 | 21 | 21 | 06/01 | 21 | 21 |
| 05/04 | 21 | 21 | 06/08 | 21 | 21 |
| 05/18 | 21 | 21 | 06/15 | 21 | 21 |

The Employer engaged in a pattern or course of conduct that signified assent by the Employer to Member-Employer participation in the Funds for Messrs. Piccarillo and Gonzalez during the audit periods. Week after week, month after month, year after year, the Employer submitted to the Funds weekly contributions of twenty-one (21) hours on behalf of Messrs. Piccarillo and Gonzalez. Thus, it is not a question of whether the Employer signed Member-Employer Addendums after the "March 10, 1993 and November 1993" collective bargaining agreements expired, but rather a question of whether the amount of contributions submitted by the Employer during the audit periods for Messrs. Piccarillo and Gonzalez was the proper amount.

Collective Bargaining Agreement Articles XI and XVIII are significant:

### Article XI, Fringe Benefit Funds

B. ... The Contractor and the Union acknowledge that they are represented by their duly designated Trustees to administer the various Fringe Benefit Trust Funds provided for in this contract. ... [E]ach Employer hereby agrees that the Fringe Benefit Fund Trustees shall have the necessary powers to fulfill their fiduciary obligations in order to fully protect each Contractor signed to this Agreement and their employee-beneficiaries under the respective plans.

D. Each Employer shall be bound by all of the terms and conditions of the Agreements and Declarations of Trust, creating the Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, New York City and Vicinity Labor Management Cooperation Fund, United Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship Journeymen Retraining Educational and Industry Fund, and Supplemental Funds, as amended, and by all By-Laws adopted to regulate each of said Funds. ...

In Article XVIII, Effectuating Clause, the Employer's President's signature appears twice.  Immediately above the second signature is the following provision:

> **The party of the First Part, herein referred to as the Employer, signatory to the Agreement, hereby acknowledges receipt of copies of the Agreement and Declaration of Trust of the New York City District Council of Carpenters Welfare Fund; Pension Fund; Apprenticeship, Journeymen Retraining, Educational and Industry Fund; United Brotherhood of Carpenters and Joiners of America Fund; New York City and Vicinity Carpenters Labor Management Fund; Supplemental Funds; Annuity Fund; and Vacation Fund.**

By operation of Articles XI and XVIII, the Employer's continued contribution actions for Messrs. Piccarillo and Gonzalez during the audit years, albeit at the wrong contribution amount, were nonetheless an assent to participation in the Funds for twenty-eight (28) hours weekly under the terms and policies set by the Funds' Trustees.  Messrs. Piccarillo and Gonzalez signing the March 10, 1993 Member-Employer Addendums placed the Employer on notice that the Employer **"shall report and pay weekly contributions on ... [Messrs. Piccarillo and Gonzalez's behalf] to the Fringe Benefit Funds in a minimum amount representing contributions for twenty-eight (28) hours work ..."**  The Funds' Board of Trustees reaffirmed its policy in a letter to all "Contributing Employers to the Carpenters Benefit Funds" that **"the minimum required contribution is twenty-eight (28) hours per week."**  Twenty-eight (28) hours means twenty-eight (28) hours, not twenty-one (21) hours.  The Employer is liable for all deficient weekly contributions less than twenty-eight (28) hours during the audited periods for Messrs. Piccarillo and Gonzalez.  The Employer's Dismissal Request is denied.

Petitioners' witness testimony and evidence established that:

- During the July 1, 2002 through November 11, 2004 and November 12, 2004 through July 6, 2006 periods, the Employer was bound to a Collective Bargaining Agreement with the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America.

- The Collective Bargaining Agreement and incorporated by reference Trust documents and Trustee policies obligated the Employer to make certain payments to Fringe Benefit Trust Funds on behalf of the Employer's "shareholders and officers," to wit Messrs. Piccarillo and Gonzalez, including weekly contributions for Messrs. Piccarillo and Gonzalez in the minimum amount of twenty-eight (28) hours.

- The Collective Bargaining Agreement authorized the Funds to conduct audits of the Employer's books and records in order to verify that all the required contributions were made to each of the aforesaid Fringe Benefit Trust Funds maintained by the Funds.

- In accordance with this auditing provision, an accountant, employed by the Funds, and with the consent of the Employer, performed an audit of the Employer's books and records.

The testimony of the Funds' auditor, Mr. Neil Alexis, established that the audits of the Employer's books and records uncovered delinquencies in the amount of contributions due the Funds during the periods of July 1, 2002 through November 11, 2004 and

10

November 12, 2004 through July 6, 2006.  The testimony further revealed that copies of the Audit Summary Report and Revised Audit Summary Reports had been forwarded to the Employer.  Thereafter, the Funds demanded payment by the Employer.  When the Employer failed to comply with the payment demand, the Notice of Intent to Arbitrate issued.

Auditor Alexis' testimony set forth the accounting method employed during the course of the audit and the computation of the amount of each alleged delinquency.  The total amount of the delinquency for the July 1, 2002 through November 11, 2004 period was seventeen thousand one hundred forty-six dollars and ten cents ($17,146.10); the total amount of the delinquency for the November 12, 2004 through July 6, 2006 period was twelve thousand three hundred seventy-five dollars and sixty-one cents ($12,375.61).  The Petitioners requested an award for contributions owed, interest, liquidated damages, late payment interest, promotional fund assessment, audit and counsel fees, arbitration and court costs as provided for by the Collective Bargaining Agreement and Trust Fund documents.  Testimony computing these amounts was received into evidence.

## AWARD

Based upon the substantial and credible evidence of the case as a whole:

1. THREE GUYS FLOOR COVERING WORKROOM INC. is delinquent in its Fringe Benefit payments due and owing to the Funds under the terms of the Collective Bargaining Agreement;

2. THREE GUYS FLOOR COVERING WORKROOM INC. shall pay to the Funds forthwith the said delinquency amount, interest on said delinquency amount, liquidated damages, late payment interest the promotional fund assessment, the Funds' audit and counsel's fees, the undersigned Arbitrator's fee, and all associated court costs in the following amounts:

```
July 1, 2002 through November 11, 2004 Period:
     Principal Due              $ 17,146.10
     Interest Due                  8,889.28
     Liquidated Damages            8,889.28
     Late Payment Interest            27.57
     Promotional Fund                203.57
     Court Costs                     375.00
     Audit Costs                   1,450.00
     Attorney's Fee                1,500.00
     Arbitrator's Fee              3,000.00
                 TOTAL         $ 41,480.80

November 12, 2004 through July 6, 2006 Period:
     Principal Due              $ 12,375.61
     Interest Due                  1,951.73
     Liquidated Damages            2,583.82
     Late Payment Interest           206.58
     Promotional Fund                148.61
     Audit Costs                   1,450.00
                 TOTAL         $ 18,716.35

     COMBINED GRAND TOTAL:     $ 60,197.15
```

3. THREE GUYS FLOOR COVERING WORKROOM INC. shall pay to the District Council Carpenters Benefit Funds the aggregate amount of sixty thousand one hundred ninety-seven dollars and fifteen cents ($60,197.15) with interest to accrue at the rate of 10% from the date of this Award.

Robert Herzog
Arbitrator

Dated: February 4,2008

State of New York   )
County of Rockland )

I, Robert Herzog, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

Robert Herzog
Arbitrator

Dated: February 4, 2008

To:  THREE GUYS FLOOR COVERING WORKROOM INC.
     Attn: Mr. Salvatore Piccarillo, President
     545 Eighth Avenue, 8th Floor
     New York, New York 10018

     Robert N. Cohen, Esq.
     Weinstein, Kaplan & Cohen, P.C.
     1325 Franklin Avenue, Suite 210
     Garden City, New York 11530

     Steven Kasarda, Esq.
     New York City District Council Carpenters Benefit Funds
     395 Hudson Street
     New York, New York 10014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY FUND,
NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS
APPRENTICESHIP, JOURNEYMAN RETRAINING,
EDUCATIONAL AND INDUSTRY FUND, NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS CHARITY
FUND, and THE NEW YORK CITY AND VICINITY
CARPENTERS LABOR MANAGEMENT COOPERATION
FUND, by MICHAEL J. FORDE, and PAUL O'BRIEN,
as TRUSTEES, and MICHAEL J. FORDE AS EXECUTIVE
SECRETARY-TREASURER, DISTRICT COUNCIL FOR NEW
YORK CITY AND VICINITY, UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA,

08 CV 3748

**SUMMONS**

**Judge Hellerstein**

                              Plaintiffs,

            -against-

THREE GUYS FLOOR COVERING WORKROOM INC.,

                              Defendant.
--------------------------------------------------------------------X

TO:

    Three Guys Floor Covering Workroom Inc.
    545 Eighth Avenue, 8th Floor
    New York, NY 10018

**YOU ARE HEREBY SUMMONED** and required to file with the clerk of this court and serve upon

    O'DWYER & BERNSTIEN, LLP
    52 Duane Street
    New York, New York 10007
    (212) 571-7100

an answer to the complaint which is herewith served upon you, within **30 days** after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**J. MICHAEL McMAHON**

CLERK

BY DEPUTY CLERK

APR 2 1 2008

DATE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------X

THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERSANNUITY FUND,
NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS
APPRENTICESHIP, JOURNEYMAN RETRAINING,
EDUCATIONAL AND INDUSTRY FUND, NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS CHARITY
FUND, UNITED BROTHERHOOD OF CARPENTERS AND
JOINERS OF AMERICA FUND and THE NEW YORK CITY
AND VICINITY CARPENTERS LABOR MANAGEMENT
CORPORATION, by MICHAEL J. FORDE, and PAUL O'BRIEN,
as TRUSTEES, AND MICHAEL J. FORDE AS EXECUTIVE
SECRETARY-TREASURER, DISTRICT COUNCIL FOR NEW
YORK CITY AND VICINITY, UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA,

'08 CIV 3748

08 CV _____

**COMPLAINT**

**Judge Hellerstein**

Plaintiffs,

-against-

THREE GUYS FLOOR COVERING WORKROOM INC.,

Defendant.

-----------------------------------------------------------------------------X

RECEIVED
APR 21 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs, (hereinafter also referred to as "Benefit Funds"), by their attorneys O'Dwyer &

Bernstien, LLP, for their Complaint allege as follows:

**NATURE OF THE CASE**

1.       This is an action to confirm and enforce an Arbitrator's Award rendered pursuant

to a collective bargaining agreement ("Agreement") between The District Council of New York

City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("Union") and

Three Guys Floor Covering Workroom Inc. ("Employer").

**JURISDICTION**

2.     This Court has subject matter jurisdiction over this proceeding pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, sections 502(a)(3)(B)(ii), (d)(1), (e) and (g) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1132(a)(3)(B)(ii), (d)(1), (e) and (g), section 515 of ERISA, 29 U.S.C. §1145, and section 9 of the Federal Arbitration Act, 9 U.S.C. §9.

3.     Personal jurisdiction is based upon Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2).

## VENUE

4.     Venue is proper in this district in that Plaintiffs' offices are located in this district.

## PARTIES

5.     At all times relevant herein the Plaintiffs were jointly administered, multi-employer, Taft-Hartley Benefit Funds administered by trustees designated by a union and by employers, established and maintained pursuant to section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5).  Plaintiffs Forde and O'Brien are fiduciaries of the Benefit Funds within the meaning of ERISA sections 3(21) and 502, 29 U.S.C. §§1002(21) and 1132.

6.     The Benefit Funds are employee benefit plans within the meaning of sections 3(1) and (3) of ERISA, 29 U.S.C. §1002(1) and (3) and are maintained for the purposes of providing health, medical and related welfare benefits, pension and other benefits to eligible participants and beneficiaries on whose behalf they receive contributions from numerous employers pursuant to collective bargaining agreements between the employers and the Union.

7.     Upon information and belief defendant Three Guys Floor Covering Workroom Inc. is a domestic corporation incorporated under the laws of the State of New York with a principal place of business located at 545 Eighth Avenue, 8th Floor, New York, NY 10018.

8.     The defendant is an employer within the meaning of section 3(5) of ERISA, 29

U.S.C. §1002 (5).

## FIRST CLAIM FOR RELIEF

9.    Defendant was bound at all relevant times by a collective bargaining agreement with the Union, which, by its terms, became effective July 1, 2001. Said Agreement provides, inter alia, that the defendant shall make monetary contributions to the Benefit Funds on the behalf of covered employees, and for the submission of disputes to final, binding arbitration.

10.    A dispute arose during the period of the Agreement between the parties when the Employer failed to comply with obligations under the Agreement to make contributions for employees in the bargaining unit.

11.    Pursuant to the arbitration clause in the Agreement, the dispute was submitted to arbitration to Robert Herzog, the duly designated impartial arbitrator.

12.    Thereafter, upon due notice to all parties, the arbitrator duly held a hearing and rendered his award, in writing, dated February 4, 2008 determining said dispute. Upon information and belief, a copy of the award was delivered to the defendant (A copy of the award is annexed hereto as Exhibit "A" and made part hereof).

13.    The arbitrator found that Three Guys Floor Covering Workroom Inc. had failed to make contributions due to the Benefit Funds for the period July 1, 2002 through July 6, 2006, in the principal amount of $60,197.15.

14.    The arbitrator also found that Three Guys Floor Covering Workroom Inc. was required to pay interest on the principal amount due at the rate of 10% per annum from the date of the award.

15.    The defendant has failed to abide by the award.

WHEREFORE, Plaintiffs demand judgment against defendant as follows:

1.    For an order confirming the arbitration award in all respects;

2.    For entry of judgment in favor of the Plaintiffs and against Three Guys Floor Covering Workroom Inc. in the principal amount of $60,197.15, plus 10% interest per year from the date of the award to the date of entry of judgment;

3.    For attorneys' fees and costs of this action;

4.    For such other and further relief as this court may deem just and proper.


Dated:  New York, New York
        April 21, 2008

                                        ANDREW GRABOIS (AG 3192)
                                        O'Dwyer & Bernstien, LLP
                                        Attorneys for Plaintiffs
                                        52 Duane Street
                                        New York, NY 10007
                                        (212) 571-7100

**Exhibit A**

# OFFICE OF THE IMPARTIAL ARBITRATOR

```
--------------------------------------------X
```
In The Matter Of The Arbitration

        between

New York City District Council of Carpenters
Pension Fund, New York City District Council of
Carpenters Welfare Fund, New York City
District Council of Carpenters Vacation Fund,        **OPINION**
New York City District Council of Carpenters
Annuity Fund, New York City District Council        **AND**
of Carpenters Apprenticeship, Journeyman
Retraining, Educational and Industry Fund,        **AWARD**
New York City District Council of Carpenters
Charity Fund, United Brotherhood of Carpenters
and Joiners of America Fund and The New York
City and Vicinity Carpenters Labor-Management
Corporation, by Michael J. Forde and Paul
O'Brien, as Trustees
               And
Michael J. Forde, as Executive Secretary-
Treasurer, District Council for New York City
and Vicinity, United Brotherhood of Carpenters
and Joiners of America

                  (Petitioners)

    -and-

THREE GUYS FLOOR COVERING WORKROOM INC.
                  (Employer)
```
--------------------------------------------X
```
BEFORE:  Robert Herzog, Esq.

     THREE GUYS FLOOR COVERING WORKROOM INC. (hereinafter referred

to as the "Employer") and the District Council of New York City and

Vicinity of the United Brotherhood of Carpenters and Joiners of

America are parties to an Independent Resilient Floor Coverers

Collective Bargaining Agreement, dated July 1, 2001, providing for

arbitration of disputes before the undersigned Arbitrator as

Impartial Arbitrator, and in which the Employer has therein agreed, for the duration of the Agreement, to pay contributions toward employee benefit funds (hereinafter collectively referred to as the "Funds"). The Petitioners, as beneficiaries of the Collective Bargaining Agreement, have standing before the Arbitrator. In accordance therewith, the Petitioners, by May 17, 2007 Notices of Intention to Arbitrate, demanded arbitration. The Funds alleged the Employer failed to make sufficient benefit contributions to the Funds for the periods of July 1, 2002 through November 11, 2004 and November 12, 2004 through July 6, 2006 as required by the Collective Bargaining Agreement.

Notices of Hearing advised the Employer, Employer Counsel, and the Petitioners that arbitration hearings were scheduled for October 2, 2007 and December 10, 2007.

On October 2, 2007 and December 10, 2007, at the place and times designated by the Notices of Hearing, Steven Kasarda, Esq. appeared on behalf of the Petitioners and Robert Cohen, Esq., of the Law Firm of Weinstein, Kaplan & Cohen, P.C., appeared on behalf of the Employer. Also present at both hearings were Salvatore Piccarillo and Robert Gonzalez, the Employer's President and Vice-President respectively.

The issues to be decided by the Arbitrator are:

1. Is dismissal of the arbitration justified based upon the Funds failure to produce written evidence requiring the Employer to make the contributions set forth in the Amended Final Audit?

2. If not, are Salvatore Piccarillo and Robert Gonzalez subject to the Member-Employer Addendum to the Collective Bargaining Agreement(s)?

3. If so, is the Employer delinquent in its contributions to the Funds for the periods July 1, 2002 through November 11, 2004 and November 12, 2004 through July 6, 2006?

4. If so, what shall be the remedy?

# D I S C U S S I O N

The Employer's President is a signatory to the Collective Bargaining Agreement covering the periods for which the Petitioners seek delinquency payments for the Funds.  The Employer and the Union have been parties to prior collective bargainining agreements as a collective bargaining relationship has existed since at least March 1993.  A Union form entitled "Collective Bargaining Agreement Preparation Form," dated March 3, 1993, documents interview answers given by the Employer representative to the Union.  One entry on the form is "Member/Employer Addendum" and is checked "yes."  Another Union form entitled "Administration Form," filled out on or about March 10, 1993, lists Salvatore Piccarillo and Robert Gonzalez as Corporate Officers and Stock Holders.  But for their names, both Employer President Piccarillo and Employer Vice President Gonzalez

3

signed identical March 10, 1993 "Member-Employer Addendum" forms.

"Member-Employer Addendum" provisions recite an established minimum

Fund contribution of twenty-eight (28) hours per week for Messrs.

Piccarillo and Gonzalez:

MEMBER-EMPLOYER ADDENDUM

F Re

ADDENDUM TO COLLECTIVE BARGAINING AGREEMENT

DATED MARCH 10 1993                         BETWEEN THE NEW YORK CITY DISTRICT COUNCIL

OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA AND............

NAME OF FIRM THREE GUYS FLOOR COVERING WORKROOM INC.

ADDRESS  271 40TH STREET BROOKLYN NY 11232

SALVATORE PICCARILLO
member-employer                         and the above-named

Corporation hereby represent that SALVATORE PICCARILLO          is a (shareholder and/or

officer or director) of the Corporation and intends to perform regular work as an

"employee", which is within the Jurisdiction of the Union as set forth in the

Collective Bargaining Agreement.

SALVATORE PICCARILLO                   and the Corporation consent and agree

that in order to substantiate that SALVATORE PICCARILLO          is an

"employee" within the terms of the Collective Bargaining Agreement and thereby

eligible to qualify as an "employee" with the New York City District Council of

Carpenters' Fringe Benefit Funds, the Corporation shall report and pay weekly

contributions on his behalf to the Fringe Benefit Funds in a minimum amount

representing contributions for twenty-eight (28) hours work (Building Construction)

thirty-two (32) hours work (shop) or 32 hours work (Heavy Construction). In the

event that SALVATORE PICCARILLO          works in excess of the minimum

hours per week as an "employee", contributions shall be paid for all additional

hours worked in accordance with the Collective Bargaining Agreement.

In the event that the Corporation fails to pay weekly contributions

for at least twenty-eight (28) hours work per week (Building Construction),

thirty-two (32) hours work per week (shop) or thirty-two (32) hours per week

(Heavy Construction)it is consented and agreed that SALVATORE PICCARILLO

shall be deemed outside that Collective Bargaining Agreement and not entitled

to any benefits from the New York City District Council of Carpenters Fringe

Benefit Funds.

The above Addendum is subject to the Constitution and Laws

of the United Brotherhood of Carpenters and Joiners of America, Section 44, Article

J, must be fully complied with.

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
Social Security Number

THREE GUYS FLOOR COVERING WORKROOM INC.
Name of Firm

X                                    PRESIDENT
Principal (Title)

X  SALVATORE PICCARILLO
Member-Employer

4

The Employer's position is the signed "Member-Employer Addendum" only applied to the collective bargaining agreement in effect on March 10, 1993 and when the collective bargaining agreement expired, so too did the authorization of the "Member-Employer Addendum" expire:

> **However, these Member-Employer Addendums only apply to the Collective Bargaining Agreements dated March 10, 1993 and November 19, 1993 and not to the Collective Bargaining Agreement … which covers the period July 1, 2001 through July 30, 2006.**
> **… Reasonable contract interpretation based on the documents presented in this case clearly reveals that … there was no Member-Employer Addendum signed in connection with the July 1, 2001 contract ….**
> [EMPLOYER BRIEF, pages 3 & 4]

By signing the "Member-Employer Addendums" in 1993, Employer President Piccarillo and Vice President Gonzalez were put on notice and acknowledged that, as a "shareholder and/or officer or director" of Three Guys Floor Covering Workroom Inc., contributions of twenty-eight (28) hours per week would have to be submitted to the Funds for them to be Fund participants and be eligible for Fund benefits.

If the Employer's premise were to be accepted, the signed Addendums expired when the "March 10, 1993 and November 19, 1993" collective bargaining agreements expired.  It then follows that Messrs. Piccarillo and Gonzalez's eligibility to participate in Fund benefits also expired which would have been manifested by the Employer no longer submitting contributions to the Funds on Messrs. Piccarillo and Gonzalez's behalf.

The Employer's actions defeat the Employer's argument that the Addendum applied only to the "March 10, 1993 and November 19, 1993"

collective bargaining agreements and not beyond. The Employer gave
its implied consent to be bound by the Addendums during the duration
of subsequent collective bargaining agreements by continuing to make
contributions to the Funds on Messrs. Piccarillo and Gonzalez's
behalf after the "March 10, 1993 and November 19, 1993" collective
bargaining agreements expired.

> **Implied consent.** That manifested by signs, actions, or facts, or by
> inaction or silence, which raise a presumption or inference that the consent has
> been given. An inference arising from a course of conduct or relationship
> between the parties, in which a mutual acquiescence or a lack of objection under
> circumstances signifying assent. ... [*Black's Law Dictionary, Sixth*
> *Edition*, page 305]

Fund Audit Reports reflect that the Employer submitted the
following contributions to the Funds for the weeks indicated:

## CONTRIBUTION HOURS SUBMITTED

| WEEK ENDING | S. PICCARILLO | R. GONZALEZ | WEEK ENDING | S. PICCARILLO | R. GONZALEZ |
|---|---|---|---|---|---|
| 08/01/2002 |  | 35 | 04/03 | 21 | 21 |
| 08/08 |  | 21 | 04/10 | 21 | 21 |
| 10/03 | 21 | 21 | 05/08 | 21 | 21 |
| 10/10 | 21 | 21 | 05/18 | 21 | 21 |
| 10/17 | 21 | 21 | 05/22 | 21 | 21 |
| 10/24 | 21 | 21 | 05/29 | 21 | 21 |
| 10/31 | 21 | 21 | 06/05 | 21 | 21 |
| 11/07 | 21 | 21 | 06/12 | 21 |  |
| 11/14 | 21 | 21 | 06/19 | 21 |  |
| 11/21 | 21 | 21 | 07/03 | 21 | 21 |
| 11/27 | 21 | 21 | 07/10 | 21 | 21 |
| 12/04 | 21 | 21 | 07/17 | 21 | 21 |
| 12/19 | 21 | 21 | 07/24 | 21 | 21 |
| 12/26 | 21 | 21 | 07/31 | 21 | 21 |
| 01/02/03 | 21 | 21 | 08/14 | 42 | 42 |
| 01/09 | 21 | 21 | 08/21 | 21 | 21 |
| 01/16 | 21 | 21 | 08/28 | 21 | 21 |
| 01/23 | 21 |  | 09/04 | 21 | 21 |
| 01/31 | 21 |  | 09/11 | 21 | 21 |
| 02/06 | 21 | 21 | 09/18 | 21 | 21 |
| 02/13 | 21 | 21 | 09/25 | 21 | 21 |
| 02/20 | 21 | 21 | 10/02 | 21 | 21 |
| 02/27 | 21 | 21 | 10/09 | 21 | 21 |
| 03/06 | 21 | 21 | 10/16 | 21 | 21 |
| 03/13 | 21 | 21 | 10/23 | 21 | 21 |
| 03/20 | 21 | 21 | 10/30 | 21 | 21 |
| 03/27 | 21 | 21 | 11/06 | 21 | 21 |

| WEEK ENDING | S. PICCARILLO | R. GONZALEZ | WEEK ENDING | S. PICCARILLO | R. GONZALEZ |
|---|---|---|---|---|---|
| 11/13 | 21 | 21 | 02/17 | 21 | 21 |
| 11/20 | 21 | 21 | 02/24 | 21 | 21 |
| 11/27 | 21 | 21 | 03/03 | 21 | 21 |
| 12/11 | 21 | 21 | 03/10 | 21 | 21 |
| 12/18 | 21 | 21 | 03/17 | 21 | 21 |
| 12/25 | 21 | 21 | 03/24 | 21 | 21 |
| 12/31 | 21 | 21 | 03/31 | 21 | 21 |
| 01/09/04 | 21 | 21 | 04/07 | 21 | 21 |
| 01/15 | 21 | 21 | 04/14 | 21 | 21 |
| 01/22 | 21 | 21 | 04/21 | 21 | 21 |
| 01/29 | 21 | 21 | 05/12 | 21 | 21 |
| 02/05 | 21 | 21 | 05/19 | 21 | 21 |
| 02/12 | 21 | 21 | 05/26 | 21 | 21 |
| 04/08 | 21 | 21 | 06/02 | 21 | 21 |
| 04/15 | 21 | 21 | 06/09 | 21 | 21 |
| 04/22 | 21 | 21 | 06/16 | 21 | 21 |
| 05/06 | 42 | 42 | 06/23 | 21 | 21 |
| 05/13 | 21 | 21 | 06/30 | 21 | 21 |
| 05/20 | 21 | 21 | 07/07 | 28 | 28 |
| 05/27 | 21 | 21 | 07/14 | 21 | 21 |
| 06/03 | 21 | 21 | 07/21 | 21 | 21 |
| 06/10 | 21 | 21 | 07/28 | 21 | 21 |
| 06/17 | 21 | 21 | 08/04 | 21 | 21 |
| 06/24 | 22 | 22 | 08/11 | 21 | 21 |
| 06/30 | 21 | 21 | 08/18 | 21 | 21 |
| 07/08 | 21 | 14 | 08/25 | 21 | 21 |
| 07/15 | 21 | 21 | 09/01 | 21 | 21 |
| 07/22 | 21 | 21 | 09/08 | 21 | 21 |
| 07/29 | 21 | 21 | 09/15 | 21 | 21 |
| 08/05 | 21 | 21 | 09/22 | 21 | 21 |
| 08/12 | 21 | 21 | 09/29 | 21 | 21 |
| 08/19 | 21 | 21 | 10/06 | 21 | 21 |
| 08/26 | 21 | 21 | 10/13 | 21 | 21 |
| 09/02 | 21 | 21 | 10/20 | 21 | 21 |
| 09/09 | 21 | 21 | 10/27 | 21 | 21 |
| 09/16 | 21 | 21 | 11/03 | 21 | 21 |
| 09/23 | 21 | 21 | 11/10 | 28 | 28 |
| 09/30 | 21 | 21 | 11/17 | 21 | 21 |
| 10/07 | 21 | 21 | 11/24 | 21 | 21 |
| 10/14 | 21 | 21 | 12/08 | 21 | 21 |
| 10/21 | 21 | 21 | 12/15 | 21 | 21 |
| 10/28 | 21 | 21 | 12/22 | 21 | 21 |
| 11/04 | 21 | 21 | 12/29 | 21 | 21 |
| 11/11 | 21 | 21 | 01/05/06 | 21 | 21 |
| 11/18 | 21 | 21 | 01/12 | 21 | 21 |
| 11/25 | 21 | 21 | 01/19 | 21 | 21 |
| 12/02 | 21 | 21 | 01/26 | 21 | 21 |
| 12/09 | 22.5 | 22.5 | 02/02 | 21 | 21 |
| 12/16 | 21 | 21 | 02/09 | 21 | 21 |
| 12/23 | 21 | 21 | 02/16 | 21 | 21 |
| 12/30 | 21 | 21 | 02/23 | 21 | 21 |
| 01/06/05 | 21 | 21 | 03/02 | 21 | 21 |
| 01/13 | 21 | 21 | 03/09 | 21 | 21 |
| 01/20 | 21 | 21 | 03/16 | 21 | 21 |
| 01/27 | 21 | 21 | 03/23 | 21 | 21 |
| 02/03 | 21 | 21 | 04/06 | 21 | 21 |
| 02/10 | 21 | 21 | 04/13 | 21 | 21 |

| WEEK ENDING | S. PICCARILLO | R. GONZALEZ | WEEK ENDING | S. PICCARILLO | R. GONZALEZ |
|---|---|---|---|---|---|
| 04/20 | 21 | 21 | 05/25 | 21 | 21 |
| 04/27 | 21 | 21 | 06/01 | 21 | 21 |
| 05/04 | 21 | 21 | 06/08 | 21 | 21 |
| 05/18 | 21 | 21 | 06/15 | 21 | 21 |

The Employer engaged in a pattern or course of conduct that signified assent by the Employer to Member-Employer participation in the Funds for Messrs. Piccarillo and Gonzalez during the audit periods. Week after week, month after month, year after year, the Employer submitted to the Funds weekly contributions of twenty-one (21) hours on behalf of Messrs. Piccarillo and Gonzalez. Thus, it is not a question of whether the Employer signed Member-Employer Addendums after the "March 10, 1993 and November 1993" collective bargaining agreements expired, but rather a question of whether the amount of contributions submitted by the Employer during the audit periods for Messrs. Piccarillo and Gonzalez was the proper amount.

Collective Bargaining Agreement Articles XI and XVIII are significant:

### Article XI, Fringe Benefit Funds

B. ...  The Contractor and the Union acknowledge that they are represented by their duly designated Trustees to administer the various Fringe Benefit Trust Funds provided for in this contract. ... [E]ach Employer hereby agrees that the Fringe Benefit Fund Trustees shall have the necessary powers to fulfill their fiduciary obligations in order to fully protect each Contractor signed to this Agreement and their employee-beneficiaries under the respective plans.

D. Each Employer shall be bound by all of the terms and conditions of the Agreements and Declarations of Trust, creating the Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, New York City and Vicinity Labor Management Cooperation Fund, United Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship Journeymen Retraining Educational and Industry Fund, and Supplemental Funds, as amended, and by all By-Laws adopted to regulate each of said Funds. ...

In Article XVIII, Effectuating Clause, the Employer's President's signature appears twice.  Immediately above the second signature is the following provision:

> **The party of the First Part, herein referred to as the Employer, signatory to the Agreement, hereby acknowledges receipt of copies of the Agreement and Declaration of Trust of the New York City District Council of Carpenters Welfare Fund; Pension Fund; Apprenticeship, Journeymen Retraining, Educational and Industry Fund; United Brotherhood of Carpenters and Joiners of America Fund; New York City and Vicinity Carpenters Labor Management Fund; Supplemental Funds; Annuity Fund; and Vacation Fund.**

By operation of Articles XI and XVIII, the Employer's continued contribution actions for Messrs. Piccarillo and Gonzalez during the audit years, albeit at the wrong contribution amount, were nonetheless an assent to participation in the Funds for twenty-eight (28) hours weekly under the terms and policies set by the Funds' Trustees.  Messrs. Piccarillo and Gonzalez signing the March 10, 1993 Member-Employer Addendums placed the Employer on notice that the Employer **"shall report and pay weekly contributions on ... [Messrs. Piccarillo and Gonzalez's behalf] to the Fringe Benefit Funds in a minimum amount representing contributions for twenty-eight (28) hours work ..."** The Funds' Board of Trustees reaffirmed its policy in a letter to all "Contributing Employers to the Carpenters Benefit Funds" that **"the minimum required contribution is twenty-eight (28) hours per week."**  Twenty-eight (28) hours means twenty-eight (28) hours, not twenty-one (21) hours.  The Employer is liable for all deficient weekly contributions less than twenty-eight (28) hours during the audited periods for Messrs. Piccarillo and Gonzalez.  The Employer's Dismissal Request is denied.

Petitioners' witness testimony and evidence established that:

- During the July 1, 2002 through November 11, 2004 and November 12, 2004 through July 6, 2006 periods, the Employer was bound to a Collective Bargaining Agreement with the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America.

- The Collective Bargaining Agreement and incorporated by reference Trust documents and Trustee policies obligated the Employer to make certain payments to Fringe Benefit Trust Funds on behalf of the Employer's "shareholders and officers," to wit Messrs. Piccarillo and Gonzalez, including weekly contributions for Messrs. Piccarillo and Gonzalez in the minimum amount of twenty-eight (28) hours.

- The Collective Bargaining Agreement authorized the Funds to conduct audits of the Employer's books and records in order to verify that all the required contributions were made to each of the aforesaid Fringe Benefit Trust Funds maintained by the Funds.

- In accordance with this auditing provision, an accountant, employed by the Funds, and with the consent of the Employer, performed an audit of the Employer's books and records.

The testimony of the Funds' auditor, Mr. Neil Alexis, established that the audits of the Employer's books and records uncovered delinquencies in the amount of contributions due the Funds during the periods of July 1, 2002 through November 11, 2004 and

November 12, 2004 through July 6, 2006.  The testimony further revealed that copies of the Audit Summary Report and Revised Audit Summary Reports had been forwarded to the Employer.  Thereafter, the Funds demanded payment by the Employer.  When the Employer failed to comply with the payment demand, the Notice of Intent to Arbitrate issued.

Auditor Alexis' testimony set forth the accounting method employed during the course of the audit and the computation of the amount of each alleged delinquency.  The total amount of the delinquency for the July 1, 2002 through November 11, 2004 period was seventeen thousand one hundred forty-six dollars and ten cents ($17,146.10); the total amount of the delinquency for the November 12, 2004 through July 6, 2006 period was twelve thousand three hundred seventy-five dollars and sixty-one cents ($12,375.61).  The Petitioners requested an award for contributions owed, interest, liquidated damages, late payment interest, promotional fund assessment, audit and counsel fees, arbitration and court costs as provided for by the Collective Bargaining Agreement and Trust Fund documents.  Testimony computing these amounts was received into evidence.

## AWARD

Based upon the substantial and credible evidence of the case as a whole:

1. THREE GUYS FLOOR COVERING WORKROOM INC. is delinquent in its Fringe Benefit payments due and owing to the Funds under the terms of the Collective Bargaining Agreement;

2. THREE GUYS FLOOR COVERING WORKROOM INC. shall pay to the Funds forthwith the said delinquency amount, interest on said delinquency amount, liquidated damages, late payment interest the promotional fund assessment, the Funds' audit and counsel's fees, the undersigned Arbitrator's fee, and all associated court costs in the following amounts:

```
July 1, 2002 through November 11, 2004 Period:
    Principal Due            $ 17,146.10
    Interest Due                8,889.28
    Liquidated Damages          8,889.28
    Late Payment Interest          27.57
    Promotional Fund              203.57
    Court Costs                   375.00
    Audit Costs                 1,450.00
    Attorney's Fee              1,500.00
    Arbitrator's Fee            3,000.00
              TOTAL         $ 41,480.80

November 12, 2004 through July 6, 2006 Period:
    Principal Due            $ 12,375.61
    Interest Due                1,951.73
    Liquidated Damages          2,583.82
    Late Payment Interest         206.58
    Promotional Fund              148.61
    Audit Costs                 1,450.00
              TOTAL         $ 18,716.35

    COMBINED GRAND TOTAL:    $ 60,197.15
```

12

3. THREE GUYS FLOOR COVERING WORKROOM INC. shall pay to the
District Council Carpenters Benefit Funds the aggregate amount
of sixty thousand one hundred ninety-seven dollars and fifteen
cents ($60,197.15) with interest to accrue at the rate of 10%
from the date of this Award.

_____
Robert Herzog
Arbitrator

Dated: February 4, 2008


State of New York  )
County of Rockland )


    I, Robert Herzog, do hereby affirm upon my oath as Arbitrator
that I am the individual described in and who executed this
instrument, which is my Award.

_____
Robert Herzog
Arbitrator

Dated: February 4, 2008

To:  THREE GUYS FLOOR COVERING WORKROOM INC.
     Attn: Mr. Salvatore Piccarillo, President
      545 Eighth Avenue, 8th Floor
     New York, New York 10018

     Robert N. Cohen, Esq.
     Weinstein, Kaplan & Cohen, P.C.
     1325 Franklin Avenue, Suite 210
     Garden City, New York 11530

     Steven Kasarda, Esq.
     New York City District Council Carpenters Benefit Funds
     395 Hudson Street
     New York, New York 10014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS                    **ANSWER AND**
ANNUITY FUND, NEW YORK CITY DISTRICT                   **COUNTERCLAIM**
COUNCIL OF CARPENTERS APPRENTICESHIP,
JOURNEYMAN RESTRAINING, EDUCATIONAL                    File No. 08 CIV 3748
AND INDUSTRY FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS CHARITY                 Assigned to
FUND, and THE NEW YORK CITY AND VICINITY               Judge Alvin K. Hellerstein
CARPENTERS LABOR-MANAGEMENT
CORPORATION, By MICHAEL J. FORDE and
PAUL O'BRIEN, as TRUSTEES, and MICHAEL J.
FORDE AS EXECUTIVE SECRETARY-TREASURER,
DISTRICT COUNCIL FOR NEW YORK CITY AND
VICINITY, UNITED BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA,

                                        Plaintiffs,

      -against-

THREE GUYS FLOOR COVERING WORKROOM, INC.,

                                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

      Defendant, THREE GUYS FLOOR COVERING WORKROOM, INC., by their

attorneys, WEINSTEIN, KAPLAN & COHEN, P.C., as and for its Answer to plaintiffs'

Complaint, respectfully alleges as follows:

      1.      Denies knowledge and information sufficient to form a belief as to the truth

of the allegations contained in paragraphs "2," "3," "4," "5," "6" and "8" of plaintiffs'

Complaint.

    2.    Denies each and every allegation contained in paragraph "9" except admits

that the defendant was a party to a Collective Bargaining Agreement with plaintiffs and

begs leave of the Court to refer to the original of same for its terms at the time of trial.

    3.    Denies each and every allegation contained in paragraph "10" of plaintiffs'

Complaint.

**AS AND FOR A FIRST, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE**

    4.    That the Court should vacate the Arbitration Award pursuant to the doctrine

of "manifest disregard of the law and facts."

**AS AND FOR A SECOND, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE**

    5.    That the Court should vacate the Arbitration Award because it violates the

doctrine of "essence of the Collective Bargaining Agreement."

**AS AND FOR A FIRST, SEPARATE AND DISTINCT COUNTERCLAIM**

    6.    That the Court should vacate the Arbitration Award herein based upon the

doctrine of manifest disregard of the law and facts."

**AS AND FOR A SECOND, SEPARATE AND DISTINCT COUNTERCLAIM**

    7.    That the Court should vacate the Arbitration Award herein since it violates

the doctrine of "essence of the Collective Bargaining Agreement."

    WHEREFORE, defendant respectfully requests that this Court dismiss plaintiffs'

Complaint in its entirety, grant defendant's Counterclaims to vacate the Arbitration

Award, plus such other and further relief as to this Court may be just, proper and

equitable under the premises.

Dated: Garden City, New York
       April 30, 2008

                                             Yours, etc.

                                             WEINSTEIN, KAPLAN & COHEN, P.C.
                                             Attorneys for Defendant

                                             By:_____
                                               ROBERT N. COHEN (RC8274)
                                           1325 Franklin Avenue
                                           Suite 210
                                           Garden City, New York 11530
                                         (516) 877-2525

TO:   O'DWYER & BERNSTIEN, LLP
        ATTENTION: ANDREW GRABOIS, ESQ. (AG3192)
        Attorneys for Plaintiffs
        52 Duane Street
        New York, New York 10007
        (212) 571-7100

3

# INDEPENDENT

# RESILIENT FLOOR COVERERS

# AGREEMENT

### between

## THREE GUYS FLOOR COVERING WORKROOM INC.
## 545 8TH AVENUE; 8TH FLOOR
## NEW YORK, NEW YORK 10018

### - and -

## THE DISTRICT COUNCIL OF NEW YORK
## CITY AND VICINITY OF THE UNITED
## BROTHERHOOD OF CARPENTERS AND
## JOINERS OF AMERICA, AFL-CIO

## JULY 01, 2001 - JUNE 30, 2006

# TABLE OF CONTENTS

| **Article** | | **Page** |
|---|---|---|
| I | Jurisdiction | 1 |
| II | Geographical Jurisdiction | 3 |
| III | Union Security | 4 |
| IV | Hours of Labor | 6 |
| V | Holidays | 8 |
| VI | Wage Rates and Fringe Benefits | 10 |
| VII | Traveling Time and Expense | 15 |
| VIII | Classification of Industry | 16 |
| IX | Job Referral | 18 |
| X | General Foreman, Foreman, Lead Person | 23 |
| XI | Fringe Benefit Funds | 24 |
| XII | Bonding | 34 |
| XIII | Miscellaneous Conditions | 37 |
| XIV | Grievance Procedure | 44 |
| XV | Greater New York Floor Coverers Industry & A.J.R.E.I. Promotional Fund | 46 |
| XVI | Savings Clause | 48 |
| XVII | Expiration Automatic Renewal | 49 |
| XVIII | Effectuating Clause | 50 |

**AGREEMENT** made and entered into this 1st day of July 2001 and effective as of July 01, 2001, by and between:

# THREE GUYS FLOOR COVERING WORKROOM INC.
## 545 8TH AVENUE; 8TH FLOOR
## NEW YORK, NEW YORK 10018

**HEREIN REFERRED TO AS**
**(THE "EMPLOYER")**

**and the**

**DISTRICT COUNCIL OF NEW YORK CITY AND**
**VICINITY OF THE UNITED BROTHERHOOD OF**
**CARPENTERS AND JOINERS OF AMERICA**
**HEREIN REFERRED TO AS**
**(THE "UNION" and/or THE "DISTRICT COUNCIL")**

## ARTICLE I

### JURISDICTION

(A) The Employer recognizes the Union as the sole and exclusive bargaining agent for those employees of the Employer covered by the Agreement doing work within the jurisdiction of  of the Union.

(B) This Agreement shall cover, and grant the persons covered hereunder, work jurisdiction over all resilient floor covering and related materials, whenever applied, including, but not limited to, all work which consists of measuring, cutting, fitting, taking up and laying of new and old carpets, protective covering as necessary

to protect linoleum, cork carpet matting, linen, linoleum and rubber on walls, floors and ceilings, all resilient tile of cork, rubber, linoleum, mastic, asphalt, vinyl, or other composition tiles for floors, walls or ceilings, drilling of holes for sockets and pins, waxing of linoleum, rubber and all other above-mentioned floor, wall or ceiling covering, fitting devices for the attachment of carpet and other floor coverings, the priming of concrete and flash patching, the spreading of all adhesives and the preparation of cracks and expansion joints, laminates, installation of self-leveling floors(as underlayment or as finished floors) and fritz tile.   Self leveling floors, seamless floor covering and the handling of all the above-mentioned materials, on jobsites, and any and all materials covered by the United Brotherhood of Carpenters and Joiners of America.  Cement down wood flooring shall be deemed to be covered under this Agreement in any geographical area normally considered to be within the jurisdiction of the Union.

(C)   This Agreement shall also cover all work which consists of sewing, altering, mending, binding or otherwise making, remodeling or repairing of new or old carpets, including oriental rugs, on commercial and rehabilitation jobs and in warehouses.

(D)   The handling and installation, including the operation of any and all machinery and/or equipment in any way related to the handling and installation of all carpeting known as ASTRO-TURF or

2

any similar name or type, whether used indoors or outdoors, is under the jurisdiction of the Union. The spraying of cement and/or adhesives for the purpose of receiving any type of flooring materials wherever or however applied, as well as the operation of any other equipment in any way connected with such installation, shall be deemed to be covered under this Agreement and within the jurisdiction of the Union.

(E) Employees reporting for work outside of the geographical jurisdiction of this Collective Bargaining Agreement, having been directed to do so by an Employer who is bound by the provisions of this Agreement, shall be entitled to all the provisions of this Agreement, regardless of the wage and fringes prevailing in the geographical area in which they are directed to report to work. If the Union has a reciprocal agreement with other Unions outside of its jurisdictional area, then the balance, if any, of wages and fringe benefits shall be paid to the Union and/or the Fund. If no such reciprocal agreement exists, all such wages and fringe benefits shall be paid to the Union and/or Fund.

## ARTICLE II

## GEOGRAPHICAL JURISDICTION

This Agreement shall cover work performed by the Employer when employing Journeymen and all other employees within the scope of

3

this Agreement within the following territorial jurisdiction in the State of New York:

Counties of:   Bronx        Queens
               Kings        Richmond
               Nassau       Rockland
               Manhattan    Suffolk
               Orange       Westchester
               Putnam       Dutchess

## ARTICLE III

### UNION SECURITY

(A)  All employees who are members of the Union at the time of signing of this Agreement shall continue membership in the Union. All other employees covered by this Agreement who are employed by Employers engaged primarily in the Building and Construction Industry shall become members of the Union seven (7) days following the beginning of employment by a member of the Employer or the date of this Agreement, whichever is later, and shall retain such membership in good standing during the term of this Agreement as a condition of continued employment by a member of the Employer.

(B)  All employees covered by this Agreement who are employed by Employers not engaged primarily in the building and construction industry shall become members of the Union on the thirtieth (13) day following the beginning of employment, or the date of this Agreement, whichever is later, and shall retain such membership during the term of this Agreement as a condition of continued

4

employment.

(C)  The Employer agrees upon notice from the Union to discharge any person covered hereunder who has not become or remained a member in good standing in the Local 2287, provided that such membership was available to the person based on terms and conditions applicable to other members and that membership was not denied or terminated for any reason other than the failure of the individual to tender periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

(D)  Each Employer warrants that no enterprise which the Employer or any officer, stockholder, partner or agent of the Employer has "substantial de facto interest in now, or achieves during the term of this Agreement, shall engage in any activities covered under this Agreement without being bound to all the terms and conditions of this Agreement.  The parties further acknowledge that those who engage in activity in violation of this provision cause great and incalculable damage to the Union and its members. Since the exact damage suffered by the Union due to a violation of this provision is not readily calculable, the parties agree that any Employer, officer, stockholder, partner or agent who violates this **Section**, as well as the Employer itself, shall pay liquidated damages in the sum of ten thousand ($10,000) dollars or the amount of actual damages the Union can prove, whichever is higher to the

5

Union for each violation of this provision.

## ARTICLE IV

### HOURS OF LABOR

(A)  The intent is to maintain the seven hour work day, thirty five hour work week. During the term of this Agreement the work day may be increased to eight hours at straight time pay hours and a forty hour work week with written notification to the District Council prior to commencement of job and must continue for the duration of the job.  Overtime hours Monday through Friday shall be paid at time and one-half.  Saturday pay shall be at the time and one-half rate.  The Contractor is expected to establish and maintain a reasonable work week schedule allowing for unusual jobsite conditions.  Other than an emergency, notice of all overtime work should be given to the Floor Coverers before noon if possible.  Floor Coverers will never be penalized for refusing to work overtime.

(B)  Flexible Starting Time: The normal work day shall start at eight (8) a.m. and may be changed by the Employer due to work site conditions to start between seven (7) a.m. and nine (9) a.m. for all or a portion of the employees.  Notification to the Union will be given by the Employer when changed from the normal eight (8) a.m. starting time.  No Floor Coverer is to start work before

6

the designated starting time.

(C)    All additional hours worked shall be paid at the time and one-half rate.

(D)    Saturday:  All hours worked shall be paid for at the rate of time and one-half.  When a holiday falls on a Saturday, then the rate shall be double time.

(E)    All Floor Coverers will be given five (5) minutes time to wrap up their tools and wash up before lunch and quitting time.

(F)    Shift Work:  The Employer may work two shifts with the first shift working eight (8) a.m. to the end of the shift at straight time rate of pay.  The second shift will receive one hour at double time rate for the last hour of the shift. (eight for seven, nine for eight).  In addition, members of the second shift shall be allowed one-half (½) hour to eat, with this time being included in the hours of work established.  There must be a first shift to work the second shift.  All additional hours worked shall be paid at the time and one-half rate.  The Employer shall notify the Union in advance of the beginning of the shift schedule.  On shift work, the Job Steward shall work no more than the shift hours.  There shall be a Job Steward on each shift who shall be appointed by the Union.  There shall be a pre-job conference with the Union before the commencement of any shift work.

7

## ARTICLE V

## HOLIDAYS

(A) The contractual holidays are:

| | |
|---|---|
| New Year's Day | Columbus Day |
| President's Day | Presidential Election Day |
| Memorial Day | Thanksgiving Day |
| Independence Day | Day after Thanksgiving |
| Labor Day | Christmas Day |

(B)  It is further agreed that no work shall be performed on Sundays or Legal Holidays, except in the case of emergency or necessity, and that no work shall be performed then unless permission is granted by the District Council on the previous workday, stating location of building where work is to be performed and the number of workers required.  DOUBLE TIME SHALL BE PAID FOR ALL WORK ON SUNDAYS AND LEGAL HOLIDAYS, except as otherwise noted. Emergency work, INVOLVING DANGER TO LIFE AND PROPERTY, may be performed without permission from the District Council.

(C)  The listed Holidays are to be non-paid holidays except for the General Foreman, Foreman and First and Second Year Apprentices who shall be paid on a weekly basis (inclusive of holidays).

(D)  In all cases, the Holidays referred to shall be observed on the day and date established by the State of New York.  When permission is granted to work on such Legal Holidays, double time shall be paid.

8

(E)  Except as provided herein, General Foreman, Foreman and first and second year apprentices shall be employed according to the established work week as provided herein except when due to the exigencies of the situation, Local 2287 grants permission to the Employer to employ apprentices for a period of time of less than a full week.  This weekly payroll basis will be followed regardless of whether a holiday falls within the week in question, provided that the individual entitled to weekly pay has been ready, willing and able to work during the week in question.

(F) Employees employed on the last legal working day before Christmas Day and before New Year's Day and who report to work on such days, shall receive three (3) hours' afternoon pay without working.  Work performed on the afternoons of said days shall be paid at the double-time rate only.  Fringe Benefit Contributions will be payable on the half-holidays referred to above.

(G)  When a Legal Holiday, defined herein this **Article**, falls on a Sunday and the following day is declared a Legal Holiday, then double-time shall be paid for all hours worked. If a Holiday is to be worked, the Union shall be notified by noon of the previous work day. No work shall be performed on Labor Day.

## ARTICLE VI

### WAGE RATES AND FRINGE BENEFITS

**Wage rates and fringe benefit contribution within the bargaining unit shall be determined and/or reallocate by Union at its sole discretion:**

### TOTAL WAGES & FRINGE BENEFITS - JOURNEYMAN FLOOR COVERERS

|  | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| Total package per hr. | $57.48 | $58.89 | $60.58 | $62.27 |

|  | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| Total package per hr. | $65.09 | $67.91 | $70.87 |

**FOREMAN -**          **$3.00 PER HR. ABOVE JOURNEYMAN SCALE**
**GENERAL FOREMAN -**  **$6.00 PER HR. ABOVE JOURNEYMAN SCALE**

| **EFFECTIVE DATES**<br>**WAGE RATE PER HOUR** | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| Journeyman | $33.68 | 35.09 | 35.67 | ----- |
| Foreman | $36.68 | 38.09 | 38.67 | ----- |
| General Foreman | $39.68 | 41.09 | 41.67 | ----- |

| **EFFECTIVE DATES**<br>**WAGE RATE PER HOUR** | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| Journeyman | $---- | ----- | ----- |
| Foreman | $---- | ----- | ----- |
| General Foreman | $---- | ----- | ----- |

**APPRENTICES**

Apprentice wage increases may be deferred for reasons determined by the Joint Apprentice Committee and or it's Training Director by written notice to the Employer.

| EFFECTIVE DATES<br>WAGE RATE PER HOUR | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| 1st yr. Apprentice 40% | $13.47 | 14.04 | 14.27 | ----- |
| 2nd yr. Apprentice 50% | $16.84 | 17.55 | 17.84 | ----- |
| 3rd yr. Apprentice 65% | $21.89 | 22.81 | 23.19 | ----- |
| 4th yr. Apprentice 80% | $26.94 | 28.07 | 28.54 | ----- |

| EFFECTIVE DATES<br>WAGE RATE PER HOUR | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| 1st yr. Apprentice 40% | $----- | ----- | ----- |
| 2nd yr. Apprentice 50% | $----- | ----- | ----- |
| 3rd yr. Apprentice 65% | $----- | ----- | ----- |
| 4th yr. Apprentice 80% | $----- | ----- | ----- |

**FRINGE BENEFIT RATE PER HOUR**
**JOURNEYMAN-FOREMAN-GENERAL FOREMAN**

| EFFECTIVE DATES | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| WELFARE | $ 8.80 | 8.80 | 8.80 | ----- |
| PENSION | $ 5.41 | 5.41 | 5.91 | ----- |
| ANNUITY | $ 4.70 | 4.70 | 5.20 | ----- |
| A.J.R.E.I.F. | $ 0.29 | 0.29 | 0.35 | ----- |
| VACATION | $ 4.40 | 4.40 | 4.40 | ----- |
| SUPPLEMENTAL FUNDS | $ 0.04 | 0.04 | 0.04 | ----- |
| U.B.C. & J.A. INT'L | $ 0.06 | 0.06 | 0.06 | ----- |
| N.Y.D.C.C. LABORS/MGT. | $ 0.10 | 0.10 | 0.15 | ----- |
| TOTAL PER HOUR | $23.80 | 23.80 | 24.91 | ----- |

| EFFECTIVE DATES | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| WELFARE | $----- | ----- | ----- |
| PENSION | $----- | ----- | ----- |
| ANNUITY | $----- | ----- | ----- |
| A.J.R.E.I.F. | $----- | ----- | ----- |
| VACATION | $----- | ----- | ----- |
| SUPPLEMENTAL FUNDS | $----- | ----- | ----- |
| U.B.C. & J.A. INT'L | $----- | ----- | ----- |
| N.Y.D.C.C. LABORS/MGT. | $----- | ----- | ----- |
| TOTAL PER HOUR | $----- | ----- | ----- |

**FRINGE BENEFIT RATE PER HOUR**
**1st 2nd 3rd & 4th YEAR APPRENTICES**

| EFFECTIVE DATES | 07/01/01 | 01/01/02 | 07/01/02 | 01/01/03 |
|---|---|---|---|---|
| WELFARE | $ 8.80 | 8.80 | 8.80 | ----- |
| PENSION | $ 2.71 | 2.71 | 2.96 | ----- |
| ANNUITY | $ 2.35 | 2.35 | 2.60 | ----- |
| A.J.R.E.I.F. | $ 0.29 | 0.29 | 0.35 | ----- |
| VACATION | $ 2.20 | 2.20 | 2.20 | ----- |
| SUPPLEMENTAL FUNDS | $ 0.04 | 0.04 | 0.04 | ----- |
| U.B.C. & J.A. INT'L | $ 0.06 | 0.06 | 0.06 | ----- |
| N.Y.D.C.C. LABORS/MGT. | $ 0.10 | 0.10 | 0.15 | ----- |
| TOTAL PER HOUR | $16.55 | 16.55 | 17.16 | ----- |

| EFFECTIVE DATES | 07/01/03 | 07/01/04 | 07/01/05 |
|---|---|---|---|
| WELFARE | $----- | ----- | ----- |
| PENSION | $----- | ----- | ----- |
| ANNUITY | $----- | ----- | ----- |
| A.J.R.E.I.F. | $----- | ----- | ----- |
| VACATION | $----- | ----- | ----- |
| SUPPLEMENTAL FUNDS | $----- | ----- | ----- |
| U.B.C. & J.A. INT'L | $----- | ----- | ----- |
| N.Y.D.C.C. LABORS/MGT. | $----- | ----- | ----- |
| TOTAL PER HOUR | $----- | ----- | ----- |

The Pension, Vacation and Annuity Fund contribution rates for Apprentices are based upon 50% of the Journeyman rate.

(A)   Any person directed to appear at a job site shall be guaranteed two (2) hours pay by the Employer if the employee appears prepared to work prior to starting time of the workday in question.  Any employee who has worked for an Employer at a job site shall be deemed to have been directed to report to that job site on the following "workday" unless the employee has been actually directed to report to another job site the preceding

12

"workday" or laid off the preceding "workday".

A Floor Coverer's work day consists of seven (7) hours. If the said employee does not work seven (7) hours because of personal reasons, the employee then would only be paid for hours actually worked.

(B) Employees covered by this Agreement shall be given one hour's notice before being discharge or laid off, and in either event they shall be fully paid at once in cash, or by company payroll check, under the conditions set forth in this **Article**. This does not apply to any temporary suspension of work for reasons beyond the control of the Employer. A temporary suspension of work, as herein set forth, shall mean a cessation of work which shall not exceed a total of two (2) days. In the event employees are laid off and have not been paid, a check shall be forwarded by special delivery, postmarked the following day, to each employee. When an Employer fails to deliver a check by Special Delivery postmarked the following day, the Employer shall thereafter, during the term of this Agreement, make cash payments of all wages due on the job site at the time of the layoff.

(C) Wages shall be paid weekly on the job before 3:30 p.m., said wages to be paid at the Employer's option, either in cash, in envelopes, upon the outside of which shall be plainly marked the Employer's name, the employee's name and number, Social Security

13

number, the hours worked and the amount of money enclosed, or by check provided:

     1.   The check is a payroll or similar type of check, containing above information as on the pay envelope, and that delivery of the checks to the employees shall be made at least on the day preceding a banking day.  Any deductions now or hereafter required by law shall also be itemized on the checks when issued.

     2.   The Employer has agreed to comply with the provisions of **Article XII** relating to bonding.  Any deductions from wages now or hereafter required by law shall also be marked on face of pay envelope.  If employees are not paid as specified above, double time shall be paid for the pay day between the hours of 3:30 p.m. and 5:30 p.m. and single time for working time thereafter, until paid, not exceeding fourteen (14) hours; provided, however, that the employees report to and remain on the job during the said fourteen (14) hours.

(D)  If any check provided by an Employer to an employee covered hereunder is returned by the Employer's bank, the Employer shall, within twenty-four (24) hours of notice of the bank's refusal to make payment, deliver to the employee, at the employee's home, the full amount due the employee in cash as well as fifty ($50.00) dollars in cash as liquidated damages to reimburse the employee for injuries incurred due to the failure of the Employer's

bank to honor the check.

## ARTICLE VII

### TRAVELING TIME AND EXPENSE

(A)    Employees covered by this Agreement who are sent to work outside of the jurisdiction of Local 2287, and who remain away overnight shall be allowed a minimum of seventy-five ($75.00) dollars per day ($45.00 for lodging; $30.00 for meals), unless equivalent provisions are made by the Employer and they shall also receive actual transportation expenses while traveling between the employee's home and the job site, including the actual cost for meals, mileage and sleeping accommodations.    Mileage shall be paid at the maximum Federal Mileage Allowance existing at the time the trip is undertaken.    The parties acknowledge that "Travel Expense" outlined in this Agreement are reimbursable employee expenses and, therefore, no deductions of any kind may be made from these monies.

(B)    Employees covered by this Agreement who are sent to work outside of the jurisdiction covered by this Agreement and who are required to return to their homes at the end of each day's work, shall receive payment at single time for all time which they travel, provided the Union has been notified.

(C)    All traveling time for work outside of the geographical jurisdiction of this Agreement between 8:00 a.m. and 3:30 p.m.,

15

including Saturdays, Sundays and Contractual Holidays, shall be paid for at the rate of single time.

(D)   When employees are ordered to the shop in the morning, to receive instructions or to pick up material, the employee's paid time shall begin at 8:00 a.m.  However, when employees are required to report to work at the job location or site, then travel time at single time shall only be paid for that time necessary to travel in excess of a 50 mile radius from the shop.

(E)   Where an employee is requested by the Employer to use his/her own car on two (2) or more jobs in one (1) day, for work in the five boroughs of New York City, the employee will receive, for an allowance for use of the car $9.60 per-day for that service, unless the accumulated railroad fare for the day is in excess of nine and 60/100 ($9.60) dollars, in which case the Employer shall pay the greater amount plus any parking fees, tolls (substantiated by receipts), and required when transporting such materials.

This payment is in addition to payment for carrying materials in the employee's car, already covered by this Agreement.


### ARTICLE VIII

### CLASSIFICATION OF INDUSTRY

Individuals, firms and corporations signing this Agreement as Employers shall be defined in three classifications as follows:

16

1.    Contractors
2.    Trade Shops
3.    Dealers

For the purpose of this Agreement, these are defined as follows:

1.    Contractors:  Those concerns who are, or may be, employ labor for installation of same direct from the Union or who contract and/or who subcontract for the direct installation of flooring materials and/or other material covered  by **Article I** of this Agreement.

2.    Trade Shops or Workrooms:  Those concerned who contract to perform only the labor of installation of same for Dealers and Contractors only, shall employ in this installation only members of the Union.

Once an award is given to a TRADE SHOP or WORKROOM from a Contractor or a Dealer, then this same TRADE SHOP or WORKROOM shall not re-subcontract the same award to another TRADE SHOP or WORKROOM who is a non-signatory Contractor to this Agreement.  To do so is in violation of this Agreement.

3.    Dealers:  Those concerns engaged in the selling of Floor and Wall Coverings, and who engage TRADE SHOPS or WORKROOMS for the installation of the materials they sell, agree to contract only to signatory Union Contractors.

17

## ARTICLE IX

## JOB REFERRAL

The Employer agrees to report to Local 2287 the location or jobsite of each contract job to be performed twenty-four (24) hours before job start.   Repeated non-reporting of jobs will initiate referral of the defaulting Employer through Grievance Procedures provided herein.

(A)   The designated representative of the Union, as well as all Business Representatives of Local 2287, shall have access to the job site, warehouse and any other business location of the Employer at all times.

(B)   The Employer shall have the right to hire the Foreman.

(C)   Nothing in this **Section** shall restrict an Employer's right to discharge an employee for just cause.   If the employee so discharged or rejected was obtained from Local Union No. 2287, the employee shall be replaced from Local Union No. 2287 to maintain the ratio established above in **Article IX, Section E.**

(1)   The Employer shall serve written notice to Local 2287 and a copy of such notice to the affected employee by certified mail, return receipt requested, to Local 2287, and to the employee postmarked within forty-eight (48) hours of the action taken.

(2)   Any employee who has been terminated, regardless of

the reason for termination, must be paid all monies due through the day of the termination, including reimbursement for any outstanding claims for expenses.   Failure of the Employer to comply with any provision of this **Section** shall negate the termination or rejection and entitle the employee to be paid as if he was working for that time period  until the breach of this **Section** is satisfied.

(3)   In any case of rejection or discharge, the Employer shall notify Local 2287, as provided herein, of the time and date of  discharge  or  rejection  and  shall  specify,  in  writing,  the reason(s) therefor.

(4)   The  Employer  shall  retain  the  right  to  reject  any job applicant referred by Local 2287 provided that the Employer can prove reasonable basis for said rejection.

(5)   It shall be presumed hereunder that the first person referred to a job site by Local 2287 shall be the Steward.   All jobs regardless of what type of agreement they work under shall have  a  New  York  District  Council  of  Carpenters  certified  Shop Steward.   The Shop Steward responsibilities are:

a)    Enforce  Collective  Bargaining  Agreement  regarding  wage  &
      fringe benefit rates.

b)    Protect the jurisdiction of the Carpenter.

c)    Check the quarterly work cards of the Carpenters, insuring
      that they are up to date.

19

d)    Be aware that all safety standards of the jobsite are up to par.

e)    Enforce 50-50 manning provisions as addressed in the Collective Bargaining Agreement.

f)    Blow the whistle at the point of work promptly at 8:00 a.m. and at 12:30 p.m., and that it also be mandatory for him to blow the whistle for the end of work, promptly at 12:00 noon and at 3:30 p.m.

g)    Attempt to settle all disputes on the jobsite. Any dispute that is unresolved will be settled by the Business Agent of that jurisdiction.

All New York City District Council certified Shop Stewards shall be allowed to use facilities to fax Shop Steward reports to the Union every week and mail the hard copies to Local 2287. When the Shop Steward has completed his work on behalf of the District Council, he shall perform any work within his trade assigned to him by the Employer. When a signatory Employer wishes to layoff a Shop Steward during a continuous employment, the Employer must notify the Union and have a meeting on the job with the Union within twenty-four (24) hours. If termination takes place, a letter must be sent to the Union.

(6)    No Steward may be required to serve as a Leadman or Foreman on the job.

(D)    The Union shall establish and maintain an open employment list for the referral for employment of competent and qualified workers.

(1)    Applicants for referral through the Union may register provided they have the necessary skill and experience to perform the job.  Such skill and experience is presumed in case of:

(a)    Journeyman Applicants who have been employed for substantial periods of time in the job applied for within two years prior to the date they seek referral in the geographical area covered by this Agreement;

(b)    Apprentices who are currently required to attend the Apprenticeship School; and

(c)    Apprentices who have successfully completed the full apprenticeship program.

(2)    Other applicants who seek to register for referral must pass a competency test given by a Joint Union-Employer Testing Board to be established under this Agreement.  Any applicant who fails to pass the test shall have the right to appeal to an Appeal Board composed of two members appointed by the Association and two members appointed by the Union.  Such an appeal must be in writing and addressed to the Union within ten (10) days after the sending of notice of failure.  In the event of a deadlock in the Appeal Board, the matter shall be referred to the Arbitrator designated

hereunder.

(E)   In selecting applicants from the referral list, the Union shall use the following criteria:

(a) Floor Coverers will be hired by the job referral list at the District Council.  The 50/50 rule will be enforced and no special requests can be made to the Union.  The Contractor can hire whom he wants on his 50% ratio.

(F)   The Employer and the Union shall post in places where notices to employees and applicants for employment are customarily posted, all provisions relating to the functioning of the hiring arrangements.

(G)   Unless this Agreement specifically requires the use of a Foreman on a particular job, the Employer may not use an apprentice on the job without first notifying Local Union 2287.   When a Foreman is required to be on a job, or the Employer chooses to use a Foreman, the Employer shall maintain a ratio of one apprentice for each four (4) Journeymen employed.   A Journeyman may not be substituted for an apprentice in this ratio nor may an apprentice be substituted for a Journeyman without specific permission from Local 2287 permitting such substitution.   Once an apprentice is hired in conjunction with a Foreman on a job, he/she shall be retained on the job until its completion unless he/she is discharged for just cause or Local 2287 grants permission, based on

22

the exigencies of job, to layoff the apprentice.

(H)    The Employer shall provide on a monthly basis, in writing, a list of persons employed to perform work within the jurisdiction described in the Agreement, as well as their hours and days worked to Local 2287.

(I)    Upon request of a representative of the Union and/or Local 2287, the Employer shall supply a list of jobs and the names and addresses of the persons who worked on each job for the month immediately preceding the request.

## ARTICLE X

### GENERAL FOREMAN, FOREMAN, LEAD PERSON

(A)    Where a job consists of 1,500 yards of reasonably continuous installation, 15,000 square feet of tile installation or 15,000 linear feet of base installation, a Foreman must be employed.

(B)    On each job where there is no working Foreman, the Employer shall appoint an individual to act as lead person.  The Employer shall have the responsibility of advising the Steward as to who the lead person is.   The lead person shall receive a Journeyman's wages.   It will be the function of the lead person, and where there is no working Foreman, to pass directions on to the individuals working pursuant to the terms of this Agreement.

23

(C)   The persons appointed as Steward, if qualified, will have the highest seniority on any particular job.  The Steward shall be appointed by the Union and there shall be a Steward for each shift. The Foreman will be the last person laid off from the job-site.

(D)   On each job where the Employer employs in excess of twenty (20) people who are covered by this Agreement, it shall retain an individual known as General Foreman, to direct the working force.


## ARTICLE XI

## FRINGE BENEFIT FUNDS

(A)   Every Employer covered by this Agreement shall contribute Employer contributions for each hour worked of all employees covered by this Agreement and employed by said Employer within the territory of this Agreement in the amounts hereinafter specified to the Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, New York City and Vicinity Labor Management Cooperation Fund, United Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship Journeymen Retraining Educational and Industry Fund, and Supplemental Funds. Each Employer's books and payroll records, including cash disbursement records, shall be made available upon demand of the Trustees at all reasonable business hours.

The Employer realizes that the failure of any Employer to make

24

the required fringe benefit fund contributions affects the liability of all Employers to this agreement and decreases the benefits available to the covered employees of the Employer. Therefore, the Employer to this Agreement shall make available to the Trustees of the various Fringe Benefit Trust Funds, or their designated auditing representatives, all pertinent books and records, including all cash disbursement records, required for an audit to enable said auditor to ascertain and independently verify that the proper contributions hereunder have been paid and such records will be produced whenever deemed necessary by the Trustees in connection with the proper administration of their fiduciary responsibilities.    In order to accomplish this end, it is specifically agreed that should any affiliate or subsidiary Employer as described in this Agreement be involved with the business activities of this Employer that this Employer will make available all the pertinent books and payroll records of such affiliate or subsidiary to the auditor so that a complete audit can be made.    The extent of the audit and the determination as to what pertinent records are necessary to complete the audit is in the sole discretion of the Employer/Union Trustees so that they may independently verify that all required contributions have been made and discover the identity of all beneficiaries under the plans that they have been entrusted with for proper administration.

25

When auditors are sent to audit the books of any Employer, General Contractor, Prime Contractor, Builder or Subcontractor and a definite appointment is scheduled, when the auditor or auditors cannot start at the appointed time and date, and must return, or when valid payroll records are not furnished, then the said Employer, General Contractor, Prime Contractor, Builder or Subcontractor shall be penalized and pay the sum of $100.00 per auditor, to cover the expense of the auditor or auditors. It shall be a violation of this Agreement for any Employer, bound by this Agreement, to fail to furnish proper records when requested, for the purpose of completing an audit. The Union shall have the right to remove all its members from the offending Employer upon twenty-four (24) hours' notice. If such men who are removed remain on the jobsite during regular working hours, they shall be paid for lost time not to exceed three (3) days' pay.

(B)   Contributions to the New York City District Council of Carpenters Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, New York City and Vicinity Labor Management Cooperation Fund, United Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship Journeymen Retraining Educational and Industry Fund, and Supplemental Funds shall be in accord with this Agreement. The contribution to the Supplemental Funds shall be allocated in the following manner:

26

Carpenters Relief and Charity Fund
TWO AND ONE - HALF CENTS ($0.025) PER HOUR

District Council Scholarship Fund
ONE-AND-ONE-HALF CENTS ($0.015) PER HOUR

The purpose of the Carpenters Relief and Charity Funds is to enable the parties to make charitable donations in the name of the carpentry industry from time to time. Said donations shall be made to duly recognized tax exempt institutions within the meaning of the Internal Revenue Code and to provide emergency assistance to bona fide victims of disaster, catastrophe and community projects for the good of the general public. The contributions shall be included in the payment of the Fringe Benefit Stamp. The Fund shall be administered by two persons, one designated by the Union and the other by the Employer Associations. They shall serve without pay and shall be bonded to the extent required by law. All monies received by the Fund shall be deposited in a bank selected by the two administrators and shall be disbursed only by check signed by both administrators. At least once a year the entire balance of the Fund on hand shall be disbursed to organizations and persons who meet the qualifications set forth above. The administrators shall keep such books or records as may be necessary. Once a year the administrators shall account for all monies received and disbursed.

The Supplemental Funds shall be established in accordance with

27

applicable law, and any employee's authorization that is required shall be secured by the Union.

It is agreed that all contributions are due and payable to the District Council Fund Office as called for in this Agreement for the other fringe benefit funds and the Employer does hereby authorize said area Fund Office to forward said contributions to the Fund Office in such manner as the Trustees of said fund shall reasonably require.

The parties also recognize their right to be represented on the New York State Carpenters Labor-Management Committee and by the execution of this Agreement the parties authorize the representatives of the participating Employers and Carpenter Unions to designate their respective Union and Employer Trustees hereby waiving all notice thereof and ratifying all actions taken by them within the scope of their authority.

Effective July 1, 1996 the parties to this Agreement recognize the New York City and Vicinity Carpenters Joint Labor Management Cooperation Trust Fund. The Committee will be funded by contributions paid through the Trust Funds Stamp Plan. Said donations shall be made in accordance with all applicable Federal and State Laws pertaining thereto.

The Contractor and the Union acknowledge that they are represented by their duly designated Trustees to administer the

28

various Fringe Benefit Trust Funds provided for in this contract. Because of the various liabilities and responsibilities placed upon all parties to this Agreement, including all Employers and Union representatives and their respectively designated Trustees, each Employer hereby agrees that the Fringe Benefit Fund Trustees shall have the necessary powers to fulfill their fiduciary obligations in order to fully protect each Contractor signed to this Agreement and their employee-beneficiaries under the respective fund plans.

(C)   When any Employer sends its employees to work in any locality outside the geographical jurisdiction as listed in **Article II** of this Agreement, it shall forward all fringe benefits for the members of Local Union 2287 to the New York City District Council of Carpenters Fringe Benefit Funds' office, and credit same to the Employer's account where required; provided, however, should the Employer be required by the Collective Bargaining Agreement with the District Council and/or Local Union outside the jurisdiction of the New York District Council to make contributions and upon proof of such payment, deduct the same from the total contributions for the reporting period due to the New York District Council.

(D)   Each Employer shall be bound by all of the terms and conditions of the Agreements and Declarations of Trust, creating the Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, New York City and Vicinity Labor Management Cooperation Fund, United

29

Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship Journeymen Retraining Educational and Industry Fund, and Supplemental Funds, as amended, and by all By-Laws adopted to regulate each of said Funds.   The Trustees of the Funds shall secure the approval of the Treasury Department under the applicable provisions of the Internal Revenue Code and shall amend the same, if necessary, to secure such approval, so as to qualify the Employer-contributions as deductions for Federal Income Tax purposes.

(E)   It is agreed that no contributions to any of the Funds as specified in this **Article** shall be required on the premium portion of wages.  For the purposes of these **Sections** only, all hours worked shall be regarded as straight-time hours.

(F)   Whenever the Employer is in default in payments to the Fringe Benefit Funds referred to in this **Article** of the Agreement, and reasonable notice of not less than seventy-two (72) hours of such default is given to the Employer, if the payments are not made, the Union may remove its members from the work of such Employer.   If such members who are removed remain at the jobsite during regular working hours, they shall be paid for lost time not to exceed three (3) days' pay.

(G)   In the event that formal proceedings are instituted before a court of competent jurisdiction by the trustees of a

Benefit Fund or Funds to collect delinquent contributions to such Fund(s), and if such court renders a judgment in favor of such Fund(s), the Employer shall pay to such Fund(s), in accordance with the judgement of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following:

    (1)  the unpaid contributions; plus

    (2)  interest on the unpaid contributions determined at the prime rate of Citibank plus 2%; plus

    (3)  an amount equal to the greater of --

        (a)  the amount of the interest charges on the unpaid contributions as determined in (b) above, or

        (b)  liquidated damages of 20% of the amount of the unpaid contributions; plus

    (4)  reasonable attorney's fees and costs of the action; and

    (5)  such other legal or equitable relief as the court deems appropriate.

In the event that proceedings are instituted before an arbitrator under **Section H** of this **Article** to collect delinquent contributions to Benefit Fund or Funds, and if such arbitrator renders an award in favor of such Fund(s), the arbitrator shall be empowered to award such interest, liquidated damages, and/or costs

31

as may be applicable under the Agreement and Declaration of Trust establishing such Fund(s).

(H)    Should any dispute or disagreement arise between the parties hereto, or between the Union and any Employer-member signatory hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder by filing a notice of intent to arbitrate in writing with said impartial arbitrator, and serving a copy of said notice on the Employer or the Union, as the case may be. Unless a waiver is mutually agreed to in writing by the parties hereto, a hearing shall be convened as soon as practicable and the arbitrator shall submit his award within twenty (20) days after the close of the hearing. The arbitrator shall have full and complete authority to decide any and all issues raised by the submission and to fashion an appropriate remedy including, but not limited to, monetary damages. The arbitrator's award in this regard shall be final and binding upon the parties hereto and the individual Employer, if any, and shall be wholly enforceable in any court of competent jurisdiction. The cost of the arbitration, including the fees to be paid to the arbitrator shall be included in the award and shall be borne by the losing party.

Roger Maher, Joseph W. Lipowski, Robert Silagi or Robert

Herzog is hereby designated as impartial arbitrator(s) hereunder.

The agreement of the parties to submit said matters regarding the payment of contributions to an arbitrator does not excuse the Employer from any statutory, civil or criminal liability which may attach to his actions under Municipal, State or Federal law. The submission of a matter to arbitration is in no way meant to affect the right of the Union to remove its members from an Employer's premises, as provided for in this Agreement.

(I) A stamp plan has been established which provides for the payment of contributions to the Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, New York City and Vicinity Labor Management Cooperation Fund, United Brotherhood of Carpenters and Joiners of America Fund, Apprenticeship Journeymen Retraining Educational and Industry Fund and Supplemental Funds pursuant to a consolidated stamp, including the filing of the monthly summary report with the Fund office. The Employer will comply with procedures established by the Benefit Fund Trustees to assure that the employee receives the consolidated stamp together with his/her pay. The stamps shall be purchased through facilities established by the Bank of New York or such other agencies authorized by the Trustees.

## ARTICLE XII

### BONDING

**Section 1**

An Employer is required to post a bond as set forth in **Article XII, Section 5** of this agreement to guarantee payment of contributions to the Funds as provided for in **Article XI.**

**Section 2 - Employer's Acknowledgment of Prompt Payments to the Funds**

The Employer further acknowledges and the parties agree that prompt payment of fringe benefit contributions is essential to the proper administration of the Agreement, the appropriate funding and actuarial soundness of the Funds and the timely payment of benefits to participating employees.  The Employer agrees to comply with the Funds' Collection Procedures, as may be adopted by the Board of Trustees, including responding to information and other requests on a timely basis, promptly including but not limited to permitting and cooperating with an audit.  When a signatory Employer owes to the Benefit Funds an amount greater than the face amount of its bond, the bond must be increased to cover such indebtedness. An Employer determined to be delinquent shall be required to make weekly cash payments to the Funds by certified check to cover on-going contribution obligations.  If this is not done, the Union at its discretion may remove all of its members from the employ of

that Employer.

## Section 3 - Job Action for Non-Complying Employer

The Employer agrees to provide a bond in such amounts as provided for here in **Article XII** relating to Bonding before commencing any work.  In the event that the Employer fails to provide such bond within seven (7) days of commencing work, the District Council may consider the Employer in default and remove its members, upon reasonable notice, from each of the Employer's job sites.  If the members remain on the site, they shall each receive no more than three (3) days of wages and fringe benefit contributions during such job action.

## Section 4 - Personal Liability of Shareholders, Officers, Other Individuals

(A)  In the event that the Employer fails for any reason to satisfy the Bonding requirement provided for here in **Article XII**, the Employer agrees that its shareholders, officers, and individuals who are empowered to execute agreements, sign checks and pay fringe benefit contributions shall be personally liable, jointly and severally, for all unpaid amounts due and owing to the Funds, including but not limited to interest, liquidated damages, auditors' costs, attorneys' fees and costs to collect the same.

(B)  No Limitations

This Section shall in no way relieve or excuse any Employer of

35

the obligation to provide the required Bond regardless of the business form under which the Employer does business, nor shall this provision limit the personal liability of any corporate officers or shareholders based on operation of law.

(C)  Application to Non-Complying Employer

Any Employer commencing work in violation of this **Section** shall be in violation of **Article XI** relating to the Funds.

**Section 5 - Bond Amount**

The Funds' Trustees shall determine the amount of Bond the Employer is required to provide, but such amount shall be no less than an amount equal to sixty days of estimated contributions.

The Employer shall provide a Bond in the minimum amounts as follows:

| Number of Employees | Bond Amount |
|---|---|
| 1-3 | $ 10,000.00 |
| 4-7 | $ 15,000.00 |
| 8-15 | $ 20,000.00 |
| 16-20 | $ 30,000.00 |
| 21-25 | $ 75,000.00 |
| 26 or more | $125,000.00 |

The Funds may seize the bond if the Funds determine that the Employer has failed to make required contributions to the Funds or if the Employer has violated the Funds' Collection Procedures. The amount of the bond shall be subject to increase or decrease, in the discretion of the Trustees, depending on the number of employees employed on a particular job site or period.

36

## ARTICLE XIII

## MISCELLANEOUS CONDITIONS

(A)   Only persons covered by this Agreement may perform work covered within the jurisdiction of this Agreement.

(B)   If employees who are subject to this Agreement are withdrawn upon the orders of their International Officers or of the Union, or of Local 2287, it shall not be considered a violation of this Agreement.

(C)   Reimbursement for the loss of tools or clothing shall be paid not to exceed:

                Tools.................. $600.00  (finish)
                                        $500.00  (concrete)
                Overcoat.............. $150.00    *
                Other Clothing........ $150.00
                Shoes................. $125.00

All Floor Coverers will be required to carry a full set of tools at all times.  The Employer shall furnish a suitable tool and clothing locker.  The locker shall have the door hinged in such a way that the hinges cannot be taken off while the door is closed without breaking the door.

(D)   The Employer agrees that it will be responsible and liable for payments of all wages and fringe benefits for any Subcontractor who is engaged by the Employer to perform work that falls within the jurisdiction, as set forth herein, of the District Council.

37

(E)  It shall be mandatory upon the General or Prime Contractor or Builder to notify the District Council within thirty (30) days of an award and prior to the start of work, that a subcontract necessitating employment of members of the District Council has been awarded.  Included in this notification shall be the name and address of such Subcontractor and location of job site.

(F)  Each party hereto agrees that neither the Union nor any Employer will discriminate, in any manner, against any individual by reason of race, color, creed, national origin, citizenship, age, sex, or affectional preference, Union membership or non-membership, or Union activity as defined in applicable federal, state or local laws. For the purposes of this **Article**, "citizenship status" means the citizenship of any person, or the immigration status of any person lawfully residing in the United States who is not a citizen or national of the United States.

(G)  Any employee required to work during the lunch period shall be paid one-half (½) hour at the overtime rate and shall be allowed one-half (½) hour to eat lunch.  All employees at the job-site are required to take their one-half (½) hour lunch. Permission to work through lunch must be given by the Employer.

(H)  When an Employer enters into a Joint Venture with an Employer who is not bound by this Agreement, then said Joint-

Venturers shall sign an Agreement as Joint Venturers with the Union. Each joint venture shall comply with the Bonding provisions in **Article XII**.

(I) Each Joint-Venturer shall furnish a new Surety Bond covering said Joint Venture or furnish the Union with a Rider from their respective insurance carriers, confirming that their respective Surety Bond protects the Fringe Benefit Funds during the period of said Joint Venture.

(J) Where, for the benefit of an Employer, an employee must cross a body of water to reach the jobsite and there is no public transportation available to said site, then it shall be the duty of the Employer to provide adequate safety and comfort for the employee's transportation. The Employer shall protect such employee under a policy of public liability insurance or any other insurance required by law for any public conveyance. Such certificate shall be posted in a conspicuous place, on any conveyance used by the Employer. Should such transportation, whether public or private, require extraordinary fare, such fare shall be paid by the Employer. The employee shall not leave the shore opposite the jobsite earlier than 8:00 a.m. and shall return to the same shore not later than 3:30 p.m.

(K) There shall be no loss in wage time to an employee on the day of injury when medical attention is required to said employee

39

while working on the Employer' job, provided that the employee submits a note from the Doctor or Clinic, stating that the employee cannot work that day.

(L)  The Employer agrees that it will not subcontract any work covered by this Agreement which will in any way, either directly or indirectly result in a lessening or lowering of the payment of wages, fringe benefits or working conditions provided herein.

(M)  All work covered by this Agreement shall be contracted or subcontracted only to an Employer who is signatory to a Collective Bargaining Agreement with the Union.  The parties hereto mutually agree with respect to such work falling within the scope of this Agreement that is to be done at the site of construction; alteration, maintenance, or repair of any building, structure, or other works, that if the Employer should contract or subcontract any of the aforesaid works falling within the trade jurisdiction of the Union as set forth herein, said Employer agrees that it will not sub-contract any work covered by this Agreement which will in any way, either directly or indirectly result in a lessening or lowering of the payment of wages, fringe benefits or working conditions provided herein.

(N)  The Contractor further agrees that, upon receiving written notice from the Union that its Subcontractor is delinquent in payment of wages, or the payment of any of the fringe benefits

called for herein, such Contractor will withhold from any Funds in its possession which are or which may be due to said Subcontractor until it receives further notice from the Union that the Subcontractor delinquencies have been paid.

(O)  In order to protect and preserve for the employees covered by this agreement all work historically and traditionally performed by them, and in order to prevent any device or subterfuge to avoid the protection or preservation of such work, it is hereby agreed that if and when the Employer shall perform any work on a job site of the type covered by this agreement as a single or joint Employer (which shall be interpreted pursuant to applicable NLRB and judicial principles) within the trade and territorial jurisdiction of the Union, under its own name or under the name of another, as a corporation, sole proprietorship, partnership, or any other business entity including a joint venture, wherein the Employer (including its officers, directors, owners, partners, or stockholders) exercises either directly or indirectly (such as through family members) controlling or majority ownership management or control over such other entity, the wage and fringe benefit terms and conditions of this agreement shall be applicable to all such work performed on or after the effective date of this Agreement.  The foregoing shall not be interpreted to apply to separate Employer situations.  It is not intended that this **Article**

41

be the exclusive source of rights or remedies which the parties may have under State or Federal laws.

(P)  The following listed tools, which are considered as Shop Equipment, shall be furnished by the Employer when decided by the Employer that they are necessary for a specific job:

1.  Power Stretcher
2.  Tile Cutter
3.  Blow Torch Tank or Tanks
4.  Electric Drill
5.  Roller - except Hand or Wall
6.  Cleaning Equipment
7.  Electric Stapler
8.  Spray Machine or Mask

(Q)  The Employer agrees to abide by all OSHA Regulations when supplying employees with safety equipment and ventilating work areas.

(R)  If an employee is required to use Powder Actuated tools he is to be qualified to use said Powder Actuated Tools by securing from the Tool Manufacturer an Operator's Card or similar proof of qualification, and the Union shall cooperate with the Employer and Tool Manufacturer in having the employee expeditiously qualified. No Powder Actuated Tools shall be used that have not been previously approved by the State Board of Standards and Appeals.

(S)  There will be no quotas imposed on Floor Coverers working on a jobsite.

(T)  Any Employer found guilty of offering cash to Floor

42

Coverers for hours worked shall pay a fine of five thousand ($5,000.00) dollars to the Carpenter's Relief and Charity Fund after he has paid monies that were due to the Benefit Funds.

(U)   All Floor Coverers will be allowed a ten minute coffee break in the morning.  This will also be allowed in the afternoon when working 40 hours.

(V)   Every signatory Employer party to this contract shall notify the District Council on its specified form, by fax, certified mail, or telephone, of the awarding of any contract on which any of the work described in **Article I** hereof shall be performed by said Employer or a Subcontractor.  Said notice shall include the location of the job, the name and address of the Contractor or Subcontractor involved, and the identity of the General Contractor.  The District Council shall then provide the Employer with a specified job identification number for that specific job.  This identification number will be utilized for the District Council job referral list, Steward's reports, and summary/remittance reports.  In addition, the Foreman, General Foreman and/or the first employee is required to report his/her presence on said jobsite and obtain this identification number.

Failure to comply with this **Section,** shall be a breach of this Agreement and shall authorize the Union to remove its members from any job on which said Contractor or Subcontractor has not complied

43

with this notice.    The aforesaid notice shall be given within thirty (30) days of the award of a contract, and in any event, prior to the commencement of work, or after the cessation of work, prior to the recommencement thereof.    It is understood that the provisions of this **Section** will be strictly enforced by the Employer, as set forth above, a pre-job conference will be held, if one is requested by the Union.    The Employer shall fax a notice of job closure to the District Council to signify the completion of the job.

## ARTICLE XIV

### GRIEVANCE PROCEDURE

**Section 1.** All complaints, disputes and differences concerning the application, interpretation, effect, purpose or breach of any term or condition of this Agreement, or in the event there shall exist any claim, demand, dispute or controversy between the parties hereto, excluding the merits of jurisdictional dispute, i.e., a dispute with another trade over the assignment of work, the parties hereto shall first attempt to settle and adjust such dispute, claim, demand or controversy by negotiation.

**Section 2.** Any grievance not resolved shall be submitted to arbitration before Roger Maher, Robert Silagi, Joseph W. Lipowski or Robert Herzog who shall serve as permanent arbitrator(s)

hereunder. The arbitrator shall have the right to conduct an ex-parte hearing in the event of the failure of either party to be present at the time and place designated for the arbitration, and shall have the power to render a decision based on the testimony before him at such hearing. The decision of the arbitrator shall be final and binding upon both parties and may be entered as a final decree or judgement in the Supreme Court of the State of New York or in a court of appropriate jurisdiction in any state where such decision shall be rendered. The costs of the arbitration, including the arbitrator's fee shall be borne equally by the Employer and the Union.

**Section 3.** It is the intent of the parties hereto that all disputes between them, both within and outside of the Agreement, shall be submitted to arbitration and that no defense to prevent the holding of the arbitration shall be permitted. Service of any documents or notice referred to above, or service of any notice required by law in connection with arbitration proceedings may be made by registered or certified mail. A post office receipt shall be conclusive evidence of proper service if mailed to the address designated by the Employer when it signed the agreement. If certified or registered mail is refused or not picked up, ordinary mail shall be deemed sufficient service provided that it is forwarded to the address of record contained in this agreement.

**Section 4.**  Upon the confirmation of the arbitrator's award, the prevailing party shall, or on any appeal therefrom, be entitled to receive all court costs in each proceeding as well as reasonable counsel fees.

## ARTICLE XV

### GREATER NEW YORK FLOOR COVERERS INDUSTRY &

### A.J.R.E.I. PROMOTIONAL FUND

The Employer covered shall contribute to the Greater New York Floor Coverers Industry Promotional Fund an amount equivalent to one-half (½) of one (1%) percent of the employee's hourly wages and fringe benefits for every hour worked by the employees of said Employers, whenever engaged in Floor Covering whatsoever.

The Benefit Fund Office of the District Council shall advise the Union and the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUND whenever an Employer shall be in default in the payment of contributions due the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUND.

Each Employer shall be bound by all the terms and conditions of the Agreement and Declaration of Trust by and between each signatory of this Agreement, creating the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUND and all By-Laws adopted to regulate said Fund.

46

All Employer-contributions to the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUNDS shall be remitted monthly with the stamp plan contributions for the Benefit Fund. The bank servicing the Benefit Funds shall deliver all such contributions to the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUNDS, after verifying that the amount of each such contribution has been correctly computed by the Employer.

The GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUNDS shall reimburse the Carpenters Fringe Benefit Funds for all expenses incurred by it.

The Fund and all payments thereunder may not be used for lobbying in support of anti-labor legislation and for any purpose contrary to the interest of the District Council nor for subsidizing of any Contractor during periods of work stoppages or strike.

There shall be established by this Agreement, a Joint Review Committee, consisting of two (2) members appointed by the District Council, and two (2) members appointed by the GREATER NEW YORK FLOOR COVERERS INDUSTRY PROMOTIONAL FUNDS, whose duties, among other things, shall be to periodically review any increase or decrease in the amount of the Surety Bonds as the case may be, or in the event of a default in the terms and conditions of the Collective Bargaining Agreement by a Contractor, signatory to this

47

Agreement, when engaged in Floor Covering as defined in **Article I**, where a new, different, or additional Bond is required or necessary, and to perform such other duties and services as may serve to upgrade and maintain the standards of proficiency of Floor Covering, and to create greater work opportunities for members of the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America.

In the event an Employer does not wish to be bound to contribute to the Greater New York Floor Coverers Industry Promotional Fund, as set forth in this **Article** hereof, then said Employer hereby agrees to be bound to contribute an amount equivalent to one-half (½) of one (1%) percent of the employee's hourly wages and fringe benefits for every hour worked by the employees of said Employer, whenever engaged in Floor Covering whatsoever, to the Apprenticeship, Journeyman Retraining, Educational and Industry Promotional Fund. This contribution is in addition to the contribution provided for in **Article VI** of this Agreement.

## ARTICLE XVI

### SAVINGS CLAUSE

If the Courts should decide that any clause or part of this Agreement is unconstitutional or illegal, or should any clause or

part of this Agreement be found contrary to present or future laws, it shall not invalidate the other portions of this Agreement, it being the sole intent and purpose of this Agreement to promote peace and harmony in the Industry as permitted by Law.

## ARTICLE XVII

### EXPIRATION AND AUTOMATIC RENEWAL

This Agreement shall be binding on the Employer and the Union, their successors and assigns. The duration of this Agreement shall continue until July 1, 2006 and shall be renewed automatically for one year intervals thereafter unless notice to the other at their last known address has been provided by either party by certified and regular mail no more than ninety (90) days nor no less than sixty (60) days before the contract expiration that such party seeks to negotiate a new contract or modify or amend this Agreement through negotiations. Once negotiations have commenced, neither party will seek to alter unilaterally the terms or conditions of employment of employees covered by this Agreement until such terms have been changed by execution of a newly negotiated agreement.

## ARTICLE XVIII

## EFFECTUATING CLAUSE

The parties hereto make and enter into this Agreement, in witness whereof, we, their duly authorized and empowered representatives, have hereunto set our hands and seal this 01st day of July, 2001.

**For The Employer: THREE GUYS FLOOR COVERING WORKROOM INC.**

By: _____        _____
　　　(Officer's Signature & Title)　　　　　　　　(Print Name)

For the Union:

DISTRICT COUNCIL OF NEW YORK CITY
AND VICINITY OF THE UNITED BROTHER-
HOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO.

By: _____

The party of the First Part, herein referred to as the Employer, signatory to this Agreement, hereby acknowledges receipt of copies of the Agreement and Declaration of Trust of the New York City District Council of Carpenters Welfare Fund; Pension Fund; Apprenticeship, Journeymen Retraining, Educational and Industry Fund; United Brotherhood of Carpenters and Joiners of America Fund; New York City and Vicinity Carpenters Labor Management Fund; Supplemental Funds; Annuity Fund; and Vacation Fund.

By: _____        _____
　　　(Officer's Signature & Title)　　　　　　　　(Date)

Acknowledgment of Promotional Fund Contribution:

Apprenticeship, Journeyman Retraining, Educational and Industry Promotional Fund

By:_____

**or**

Greater New York Floor Coverers Industry Promotional Fund

By:_____

50

In the Matter of:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE NEW YORK CITY DISTRICT COUNCIL
OF CARPENTERS PENSION FUND, NEW
YORK CITY DISTRICT COUNCIL OF
CARPENTERS WELFARE FUND, NEW
YORK CITY DISTRICT COUNCIL OF
CARPENTERS VACATION FUND, NEW
YORK CITY DISTRICT COUNCIL OF
CARPENTERS ANNUITY FUND, NEW
YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP,
JOURNEYMAN RESTRAINING,
EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS CHARITY
FUND, and THE NEW YORK CITY AND
VICINITY CARPENTERS LABOR-
MANAGEMENT CORPORATION, By
MICHAEL J. FORDE and PAUL O'BRIEN,
as Trustees,

**RESPONDENT'S
MEMORANDUM OF LAW IN
SUPPORT OF ITS APPLICATION
TO DISMISS THE ARBITRATION**

                                 Petitioners,

    -against-

THREE GUYS FLOOR COVERING
WORKROOM, INC.,

                            Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PRELIMINARY STATEMENT

    This Memorandum of Law is submitted in support of the application of

Respondent THREE GUYS FLOOR COVERING WORKROOM, INC.'s application to

dismiss the arbitration proceeding herein.

**BACKGROUND**

On or about May 17, 2007, THE NEW YORK DISTRICT COUNCIL OF

CARPENTERS BENEFIT FUNDS (hereinafter referred to as the "FUND") served two

(2) Notices of Intention to Arbitrate alleging that the FUND was entitled to delinquent

fringe benefit contributions for the period of 7/1/02 through 11/11/04 in the sum of

$100,038.22 and for the period 11/12/04 through 7/6/06 in the sum of $65,079.86. (See

Joint Exhibits "3B and 4B(b)")  Thereafter, on or about August 20, 2007, the FUND

amended its Final Audit Report to seek $25,722.79 for the period 7/1/02 through 11/11/04

and $14,238.52 for the period 11/12/04 through 7/7/06. (See Exhibits "F1" and "F2")

Then, on or about October 18, 2007, the FUND, once again, amended its "Final

Order Report" now seeking $90,829.14 for the period 7/1/02 through 11/11/04 and

$58,150.99 for the period between 11/11/04 through 7/7/06. (See Exhibit "F7(a)" and

"(b)")

It is undisputed that the parties are bound by a Collective Bargaining Agreement

entitled the "Independent Resilient Floor Coverers Agreement" between the Respondent

and THE DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF THE

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-

CIO. The Agreement covers the period July 1, 2001 through June 30, 2006. (See Joint

Exhibit "1")

## **ARGUMENT**

The position taken by the FUND is that Salvatore Piccarillo and Robert Gonzalez as principals of THREE GUYS FLOOR COVERING WORKROOM, INC. are required to make contributions for a minimum of twenty-eight (28) hours of work per week whether or not they work those hours or not. In support of this position, the FUND has submitted in evidence as FUND'S Exhibit "F5a" and "F5b," two (2) Member-Employer Addendums, each providing that pursuant to the Collective Bargaining Agreements dated March 10, 1993 and November 19, 1993 between the FUND and the Respondent, that the Respondents, as principals, would pay weekly contributions for a minimum of twenty-eight (28) hours per week to the FUND. However, these Member-Employer Addendums only apply to the Collective Bargaining Agreements dated March 10, 1993 and November 19, 1993 and not to the Collective Bargaining Agreement referred to above and marked Joint Exhibit "1" which covers the period July 1, 2001 through July 30, 2006. The FUND has admitted that no Member-Employer Addendum was signed by the Respondent for the relevant period. Additionally, a review of the Collective Bargaining Agreement (Joint Exhibit "1") reveals that there is no language in the Agreement requiring the minimum of twenty-eight (28) hours per week of contributions to the FUND by the principal-employer.

In an extremely telling letter dated August 6, 2007 (Employer Exhibit "2"), the FUND indicates that its policy regarding benefit contributions for principals, effective

3

September 1, 2006, is that principals who are union members and have executed a
Member-Employer Participation Agreement with the FUND are now required to
contribute twenty-eight (28) hours per week in benefits in order to be eligible to
participate in the benefit fund.  (Annexed hereto and made a part hereof and marked
Exhibit "1" is a copy of said letter dated August 6, 2007, along with a proposed
participation Agreement.)  The August 6, 2007 letter refers back to an August 24, 2006
letter allegedly sent by the FUND to the Respondent at that time indicating the change
effective September, 1, 2006.  (Annexed hereto and made a part hereof and marked
Exhibit 2 is a copy of said August 24, 2006 letter previously marked as Employer Exhibit
"3".)

It is respectfully submitted that reasonable contract interpretation based on the
documents presented in this case clearly reveals that since there was no Member-
Employer Addendum signed in connection with the July 1, 2001 contract, that the
minimum twenty-eight (28) hour term did not apply to Respondent until September 1,
2006.  Since the audit in this case runs between July 2002 and June 2006, the FUND can
point to no written authority compelling the Respondent to pay a minimum of twenty-
eight (28) hours per week contributions during the relevant term.  One would ask, why
would the FUND require a New Member Participation Agreement if there had always
been a rule requiring the minimum twenty-eight hours (28) contribution?

Additionally, as proof that the FUND never intended to charge the Respondent the

4

minimum twenty-eight (28) hour contribution, the Audit conducted by the FUND for the

period 1/1/00 to 6/30/01 reveals no requirement of the twenty-eight (28) hour minimum

contribution.  (Annexed hereto and made a part hereof and marked Exhibit "3" is a copy

of said Audit from 1/1/00 through 6/30/01.)

### CONCLUSION

By reason of the premises, the FUND has presented no written evidence requiring

the Respondent to make the contributions as requested in the Amended Final Audit.  As

such, since the Arbitration is based upon this Audit, it must be dismissed based upon

failure of proof.

Dated: Garden City, New York
        December 19, 2007

Respectfully submitted,

WEINSTEIN, KAPLAN & COHEN, P.C.
Attorneys for Respondent THREE GUYS
FLOOR COVERING WORKROOM, INC.

By:_____
       ROBERT N. COHEN
1325 Franklin Avenue
Suite 210
Garden City, NY 11530
(516) 877-2525

TO:    ROBERT HERZOG, ESQ.
       Arbitrator
       P.O. Box 25
       Hillsdale, New Jersey 07642

5

STEVEN C. KASARDA, ESQ.
Attorney for Petitioner
NEW YORK DISTRICT COUNCIL OF CARPENTERS BENEFIT FUNDS
395 Hudson Street
New York, NY 10014-3695

**Exhibit 1**

# NEW YORK DISTRICT COUNCIL OF CARPENTERS

## BENEFIT FUNDS

**Stuart R. GraBois**
Executive Director

395 Hudson Street
New York, N.Y. 10014
Telephone: (212) 366-7300
Fax: (212) 366-7444

UNION
TRUSTEES

Michael J. Forde
Chairman
Peter Thomassen
Denis Sheil
Lawrence D'Errico
John E. Greaney
Charles Harkin

MANAGEMENT
TRUSTEES

Paul O'Brien
Co-Chairman
George Vaughn
Richard Dowling
David T. Weinberg
Kevin M. O'Callaghan
Joseph Olivieri

**TO:**     Contributing Employers to the     **DATE:** August 06, 2007
            Carpenters Benefit Funds

**FROM:**   Board of Trustees

**SUBJECT:**   Benefit Contributions for Union Members who are Principals and/or Non-
               Classified Workers

This letter is to serve as a follow-up to the letter mailed August 24, 2006.

The Funds' policy regarding benefit contributions for principals (owners) and non-classified workers (including superintendents, project managers, estimators etc.) as determined by the Board of Trustees, effective September 1, 2006 is as follows:

1.     Effective September 1, 2006, principals (owners) and/or non-classified workers (including superintendents, project managers, estimators etc.) who are union members wishing to participate in the NYDCC Benefit Funds program must execute a Member Employer participation agreement.

2.     Effective September 1, 2006, with respect to principals (owners) who are union members and have executed a Member Employer participation agreement with the Funds, the minimum required contribution is twenty-eight (28) hours per week.

3.     Effective September 1, 2006, with respect to contractors wishing to purchase full benefits for their non-classified workers (including superintendents, project managers, estimators etc.) who are union members and have executed a Member Employer participation agreement with the Funds, the required contributions are for the same number of hours as carpenters in the same industry, e.g., 35 or 40 hours per week.

There are no exceptions to these rules and the Funds will have no alternative other than to seek interest and damages if full payments are not timely made.

442

# PARTICIPATION AGREEMENT

This Participation Agreement (the "Agreement"), effective the first day of September, 2006, is by and between the New York City District Council of Carpenters Annuity Fund (the "Annuity Fund"), the New York City District Council of Carpenters Apprenticeship Fund (the "Apprenticeship Fund"), the New York City District Council of Carpenters Pension Fund (the "Pension Fund"), the New York City District Council of Carpenters Welfare Fund (the "Welfare Fund"), the New York City District Council of Carpenters Vacation Benefit (the "Vacation Benefit"), the New York City District Council of Carpenters Labor Management Corporation (the "Labor Management Corporation") (collectively, the "Funds") and THREE GUYS FLR COVG WKRM INC (the "Employer").

I.    PARTICIPATION BY EMPLOYER

By signing, the Employer agrees to be bound by this Agreement to participate in the Funds by enrolling in all the Funds either: (check the box which applies)

☐    the Employer's Principal-Owners; or

☐    the Employer's Principal-Owners/Non-Classified Worker Employees (as defined in Section II)

The Employer shall make contributions on behalf of the individuals above (the "Participants"), as called for in this Agreement.

It is intended that the Participants shall continue to participate in the Funds indefinitely. Notwithstanding the prior sentence, participation in the Funds shall be irrevocable by the Employer during the term of the collective bargaining agreement between the Employer and the New York City District Council of Carpenters (the "Union") governing the participation of the Employer's collectively bargained carpenter employees in the Funds (the "Applicable Collective Bargaining Agreement").

The Employer further agrees to be bound by all the terms and conditions of the Agreements and Declarations of Trusts (the "Trusts") establishing the Funds, by the governing plan documents (the "Plans"), by all rules and regulations adopted to regulate the Funds, and by any and all other instruments necessary and proper to administer the Funds (collectively, the "Funds' Governing Documents"). The Funds' Governing Documents are hereby made part of this Agreement and shall be considered as incorporated herein. To the extent the terms and conditions of this Agreement are inconsistent with the terms and conditions set forth in the Funds' Governing Documents, the terms and conditions of the Funds' Governing Documents shall control.

The Employer further agrees and consents to the employer-designated Trustees of the Board of Trustees of the Funds (the "Trustees") to serve as such in accordance with the aforementioned Trusts.

II.    ELIGIBILITY OF EMPLOYEES FOR PARTICIPATION

10242610.8

A Principal-Owner and, if applicable, Non-Classified Worker Employee of the Employer shall become eligible to participate in the Funds in accordance with the eligibility rules of the applicable plan document. Notwithstanding the prior sentence, a Principal-Owner and, if applicable, Non-Classified Worker Employee shall only be eligible to participate in the Funds if an Applicable Collective Bargaining Agreement exists between the Union and the Employer. Notwithstanding the prior sentence, this Agreement shall not govern Employer contributions to the Funds on behalf of employees who are included in a unit of employees covered by a collective bargaining agreement between a labor organization and the Employer providing for employee pension or welfare benefits.

For purposes of this Agreement, the term "Principal-Owner" shall mean a principal (owner). The term "Non-Classified Worker Employee" shall mean a non-classified worker of the Employer. Non-classified workers include superintendents and project managers.

The Employer agrees to enroll in the Funds only Principal-Owners and, if applicable in accordance with Section I, Non-Classified Worker Employees, and shall make contributions on behalf of all such individuals.

The Employer further agrees to provide to each Fund written notice within thirty (30) days after any Participant enrolled in the Funds: (a) dies; (b) is terminated from employment; (c) ceases to be eligible to participate in the Funds; or (d) otherwise ceases to be a Principal-Owner/Non-Classified Worker Employee.

III.    CONTRIBUTION BY EMPLOYER

The Employer agrees to timely contribute to the Funds, at such times specified in the applicable Trust or by the Trustees, at the rate(s) specified in the Applicable Collective Bargaining Agreement for hours worked by a Participant, subject to the following limits:

| Principals (Owners) | 28 hours per week |
|---|---|
| Non-Classified Workers | Contributions are required to be made for the same number of hours as carpenters working in the same industry, *e.g* 35 or 40 hours per week |

All contributions to the Funds shall be payable on a weekly basis, via remittances to ADP.

IV.    COLLECTION BY FUNDS

The Employer agrees to timely contribute to the Funds and to be bound by all the terms and conditions of the Statement of Policy for Collection of Employer Contributions (the "Policy"). Pursuant to the Policy, the Employer is required, *inter alia*, to make contributions, to be subject to audit of payroll and other records, and to be liable for interest, liquidated damages, attorney's fees and costs if the Employer is delinquent in its contributions to the Funds. The Policy is hereby made part of this Agreement and shall be considered as incorporated herein. To the extent the terms and conditions of this Agreement are inconsistent with the terms and

conditions set forth in the aforementioned Policy, the terms and conditions of the Policy shall control. The Employer further agrees to provide evidence, in a form and manner requested by the Funds, that all employees on behalf of whom it makes contributions to the Funds are Principal-Owner/Non-Classified Worker Employees.

In the event this Agreement is terminated or the Trustees determine, in their sole and absolute discretion, that the Employer has withdrawn from the Pension Fund pursuant to the Pension Plan and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the Employer will be subject to the Pension Fund's and ERISA's rules regarding withdrawal liability.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, the Employer and the New York City District Council of Carpenters Annuity Fund, the New York City District Council of Carpenters Apprenticeship Fund, the New York City District Council of Carpenters Pension Fund, the New York City District Council of Carpenters Welfare Fund, the New York City District Council of Carpenters Vacation Benefit and the New York City District Council of Carpenters Labor Management Corporation have executed this Agreement as of the date set forth below.

THREE GUYS FLR COVG WKRM INC

By:_____

Name:

Title:

Date _____

NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS
ANNUITY FUND

By:_____

Name:

Title:

Date _____

By:_____

Name:

Title:

Date _____

NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS
APPRENTICESHIP FUND

By:_____

Name:

Title:

Date _____

By:_____

Name:

Title:

Date _____

NEW YORK CITY DISTRICT
COUNCIL OF CARPENTERS
PENSION FUND

By:_____

Name:

Title:

Date _____

By:_____

Name:

Title:

Date _____

10242610.8

-4-

**Exhibit 2**

# NEW YORK DISTRICT COUNCIL OF CARPENTERS

**UNION TRUSTEES**

Michael J. Forde
Chairman
Peter Thomassen
Denis Sheil
Lawrence D'Errico
John E. Greaney
Charles Harkin

## BENEFIT FUNDS

**Stuart R. GraBois**
Executive Director

395 Hudson Street
New York, N.Y. 10014
Telephone: (212) 366-7300
Fax: (212) 366-7444

**MANAGEMENT TRUSTEES**

Paul O'Brien
Co-Chairman
George Greco
Richard Harding
David T. Meberg
Kevin M. O'Callaghan
Joseph Olivieri

**TO:**   Contributing Employers to the
Carpenters Benefit Funds

**DATE:**  August 24, 2006

**FROM:**  Board of Trustees

**SUBJECT:**  Benefit Contributions for Principals and Non Classified Workers

The Funds' policy regarding benefit contributions for Principals (owners) and non-classified workers as determined by the Board of Trustees, effective September 1, 2006 is as follows:

1.    Effective September 1, 2006, with respect to principals (owners) who have executed a Member Employer participation agreement with the Funds, the minimum required contribution is twenty-eight (28) hours per week.

2.    Effective September 1, 2006, contractors wishing to purchase full benefits for their non-classified workers, including superintendents, project managers, estimators, etc. who are union carpenters, are required to make contributions for the same number of hours as carpenters in the same industry, e.g., 35 or 40 hours per week.

There are no exceptions to these rules and the Funds will have no alternative other than to seek interest and damages if full payments are not timely made.

MEMBER-EMPLOYER ADDENDUM

ADDENDUM TO COLLECTIVE BARGAINING AGREEMENT

DATED MARCH 10 1993 _____ BETWEEN THE NEW YORK CITY DISTRICT COUNCIL

OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA AND.............

NAME OF FIRM THREE GUYS FLOOR COVERING WORKROOM INC. _____

ADDRESS  271 40TH STREET BROOKLYN NY 11232 _____

SALVATORE PICCARILLO _____ and the above-named
member-employer

Corporation hereby represent that SALVATORE PICCARILLO _____ is a (snareholder and/or

officer or director) of the Corporation and intends to perform regular work as an

"employee", which is within the jurisdiction of the Union as set forth in the

Collective Bargaining Agreement.

SALVATORE PICCARILLO _____ and the Corporation consent and agree

that in order to substantiate that SALVATORE PICCARILLO _____ is an

"employee" within the terms of the Collective Bargaining Agreement and thereby

eligible to qualify as an "employee" with the New York City District Council of

Carpenters' Fringe Benefit Funds, the Corporation shall report and pay weekly

contributions on his behalf to the Fringe Benefit Funds in a minimum amount

representing contributions for twenty-eight (28) hours work (Building Construction)

thirty-two (32) hours work (shop) or 32 hours work (Heavy Construction).  In the

event that SALVATORE PICCARILLO _____ works in excess of the minimum

hours per week as an "employee", contributions shall be paid for all additional

hours worked in accordance with the Collective Bargaining Agreement.

In the event that the Corporation fails to pay weekly contributions

for at least twenty-eight (28) hours work per week (Building Construction),

thirty-two (32) hours work per week (shop) or thirty-two (32) hours per week

(Heavy Construction)it is consented and agreed that SALVATORE PICCARILLO _____

shall be deemed outside that Collective Bargaining Agreement and not entitled

to any benefits from the New York City District Council of Carpenters Fringe

Benefit Funds.

The above Addendum is subject to the Constitution and Laws

of the United Brotherhood of Carpenters and Joiners of America, Section 44, Article

J, must be fully complied with.

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 _____
Social Security Number

THREE GUYS FLOOR COVERING WORKROOM INC.
Name of Firm

X _____ PRESIDENT
Principal (Title)

X  SALVATORE PICCARILLO _____
Member-Employer

<u>MEMBER-EMPLOYER ADDENDUM</u>

ADDENDUM TO COLLECTIVE BARGAINING AGREEMENT

DATED MARCH 10 1993 _____ BETWEEN THE NEW YORK CITY DISTRICT COUNCIL

OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA AND.............

NAME OF FIRM THREE GUYS FLOOR COVERING WORKROOM INC. _____

ADDRESS 271 40 th Street Brooklyn N.Y.11232 _____

_____ Robert Gonzalez _____ and the above-named
member-employer

Corporation hereby represent that___Robert Gonzalez_____is a (shareholder and/or

officer or director) of the Corporation and intends to perform regular work as an

"employee", which is within the Jurisdiction of the Union as set forth in the

Collective Bargaining Agreement.

_____ Robert Gonzalez _____and the Corporation consent and agree

that in order to substantiate that___Robert Gonzalez_____is an

"employee" within the terms of the Collective Bargaining Agreement and thereby

eligible to qualify as an "employee" with the New York City District Council of

Carpenters' Fringe Benefit Funds, the Corporation shall report and pay weekly

contributions on his behalf to the Fringe Benefit Funds in a minimum amount

representing contributions for twenty-eight (28) hours work (Building Construction)

thirty-two (32) hours work (shop) or 32 hours work (Heavy Construction).  In the

event that___Robert Gonzalez_____works in excess of the minimum

hours per week as an "employee", contributions shall be paid for all additional

hours worked in accordance with the Collective Bargaining Agreement.

In the event that the Corporation fails to pay weekly contributions

for at least twenty-eight (28) hours work per week (Building Construction),

thirty-two (32) hours work per week (shop) or thirty-two (32) hours per week

(Heavy Construction)it is consented and agreed that_Robert Gonzalez_____

shall be deemed outside that Collective Bargaining Agreement and not entitled

to any benefits from the New York City District Council of Carpenters Fringe

Benefit Funds.

The above Addendum is subject to the Constitution and Laws

of the United Brotherhood of Carpenters and Joiners of America, Section 44, Article

J, must be fully complied with.

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
Social Security Number

Three guys Floor Covering Workroom Inc
Name of Firm

X _____ vice pres Sec.
Principal  (Title)

X _____
Member-Employee

# NEW YORK DISTRICT COUNCIL OF CARPENTERS

## BENEFIT FUNDS

**Stuart R. GraBois**
Executive Director

395 Hudson Street
New York, N.Y. 10014
Telephone: (212) 366-7300
Fax: (212) 366-7444

**UNION TRUSTEES**
Michael J. Forde
Chairman
Peter Thomassen
Denis Sheil
Lawrence D'Errico
John E. Greaney
Charles Harkin

**MANAGEMENT TRUSTEES**
Paul O'Brien
Co-Chairman
George Greco
Richard Harding
David T. Meberg
Kevin M. O'Callaghan
Joseph Olivieri

**TO:**     Contributing Employers to the
          Carpenters Benefit Funds

**DATE:**  August 24, 2006

**FROM:**   Board of Trustees

**SUBJECT:**   Benefit Contributions for Principals and Non Classified Workers

The Funds' policy regarding benefit contributions for Principals (owners) and non-classified workers as determined by the Board of Trustees, effective September 1, 2006 is as follows:

1.    Effective September 1, 2006, with respect to principals (owners) who have executed a Member Employer participation agreement with the Funds, the minimum required contribution is twenty-eight (28) hours per week.

2.    Effective September 1, 2006, contractors wishing to purchase full benefits for their non-classified workers, including superintendents, project managers, estimators, etc. who are union carpenters, are required to make contributions for the same number of hours as carpenters in the same industry, e.g., 35 or 40 hours per week.

There are no exceptions to these rules and the Funds will have no alternative other than to seek interest and damages if full payments are not timely made.

442

# NEW YORK DISTRICT COUNCIL OF CARPENTERS

**UNION TRUSTEES**

Michael J. Forde
Chairman
Peter Thomassen
Denis Sheil
Lawrence D'Errico
John E. Greaney
Charles Harkin

# BENEFIT FUNDS

**Stuart R. GraBois**
**Executive Director**

395 Hudson Street
New York, N.Y. 10014
Telephone: (212) 366-7300
Fax: (212) 366-7444

**MANAGEMENT TRUSTEES**

Paul O'Brien
Co-Chairman
George Greco
Richard Harding
David T. Meberg
Kevin M. O'Callaghan
Joseph Olivieri

**TO:**     Contributing Employers to the          **DATE:**  August 06, 2007
Carpenters Benefit Funds

**FROM:**    Board of Trustees

**SUBJECT:**    Benefit Contributions for Union Members who are Principals and/or Non-
Classified Workers

This letter is to serve as a follow-up to the letter mailed August 24, 2006.

The Funds' policy regarding benefit contributions for principals (owners) and non-classified
workers (including superintendents, project managers, estimators etc.) as determined by the
Board of Trustees, effective September 1, 2006 is as follows:

1.      Effective September 1, 2006, principals (owners) and/or non-classified workers
(including superintendents, project managers, estimators etc.) who are union members wishing to
participate in the NYDCC Benefit Funds program must execute a Member Employer
participation agreement.

2.      Effective September 1, 2006, with respect to principals (owners) who are union members
and have executed a Member Employer participation agreement with the Funds, the minimum
required contribution is twenty-eight (28) hours per week.

3.      Effective September 1, 2006, with respect to contractors wishing to purchase full benefits
for their non-classified workers (including superintendents, project managers, estimators etc.)
who are union members and have executed a Member Employer participation agreement with the
Funds, the required contributions are for the same number of hours as carpenters in the same
industry, e.g., 35 or 40 hours per week.

There are no exceptions to these rules and the Funds will have no alternative other than to seek
interest and damages if full payments are not timely made.

442

# NEW YORK DISTRICT COUNCIL OF CARPENTERS

## BENEFIT FUNDS

Stuart R. GraBois
*Executive Director*

UNION
TRUSTEES

Michael J. Forde
Chairman
Peter Thomassen
Gene Maiello
Denis Sheil
Lawrence D'Errico
Christopher Wallace

MANAGEMENT
TRUSTEES

Paul O'Brien
Co-Chairman
George Greco
Richard Harding
Michael Mazzucca
David Meberg
Joseph Olivieri

395 Hudson Street
New York, N.Y. 10014
Telephone: (212) 366-7300
Fax: (212) 366-7444

January 23, 2002

Three Guys Floor Covering Workroom, Inc.
545 Eighth Avenue
New York, NY 10018

RE: Audit Period 01/01/00 – 06/30/01

Gentlemen:

An audit of the books and records of your company for the above audit period has been conducted by Abrams, Herde & Merkel LLP for the New York District Council Carpenters Benefit Funds.

Based upon this examination and the supporting documentation available to this office, we have determined that no additional monies are due the Funds for this audit period.

Thank you for your cooperation in this matter.

Very truly yours,

Stuart R. GraBois
Executive Director

cc: J. Cerami
R. Shaw
R. Neidig

| Employer | Three Guys Floor Covering Workroom, Inc. | | |
|---|---|---|---|
| Address | 545 Eighth Avenue, New York, NY 10018 | | |
| Mail Recap To | 545 Eighth Avenue, New York, NY 10018 | | |
| Telephone # | 212-244-0444 | Fax # | — |
| Contact | Robert Gonzales | Position | Vice President |
| Principal(s) | Salvatore Picarllo | Position | President |
| Audit Period | 1/1/2000  TO  6/30/2001 | Acct(s) | I/P-14680 |

| Agreement | Period(s) | | |
|---|---|---|---|
| Independent Outside | 7/1/1996 | To | 6/30/2001 |
| Independent Resilient Floor | 7/1/1996 | To | 6/30/2001 |
| — | — | To | — |

| Surety Information | Effective | Expiration |
|---|---|---|
| $5,000 CD | — | To — |
| ---- | — | To — |

| | | | |
|---|---|---|---|
| Principal | $0.00 | — | |
| 10% Del Assessment | - | — | |
| Interest | - | Amount Due | $    0.00 |
| Current Audit Deficiency | $0.00 | | |
| Current Audit Payments | - | Current Audit Payments | - |
| Balance Due-Current Audit | $0.00 | Balance Due-Current Audit | $0.00 |
| Prior Audit Balance | - | Prior Audit Balance | - |
| Subsequent Audit Balance | - | Subsequent Audit Balance | - |
| Total Due | $0.00 | Total Due | $    $0.00 |

*No Findings*                          1/22/2002

Analysis of Findings

| Employer: | Three Guys Floor Covering Workroom, Inc. | | |
|---|---|---|---|
| Audit Period: | 1/1/2000 TO 6/30/2001 | | |
| Account # | 1IF-14680 | | |

| | Contract Type | | |
| | Benefit Rate | | |
| | Internet Rate | | |
| | Benefit Period | | |

| | Current Amt In Dollars | % |
|---|---|---|
| | **No Findings** | |
| Insufficient Benefit Purchases | 0.00 | #DIV/0! |
| Shop Stewards Reports | 0.00 | #DIV/0! |
| Non Union Employees | 0.00 | #DIV/0! |
| Non-Union Subcontractors | 0.00 | #DIV/0! |
| Principal(s) Officers | 0.00 | #DIV/0! |
| Unverified Jurisdiction | 0.00 | #DIV/0! |
| Unverified Trades | 0.00 | #DIV/0! |
| Non-Union Operation | 0.00 | #DIV/0! |
| Unregistered Apprentice | 0.00 | #DIV/0! |
| Rate Differential | 0.00 | #DIV/0! |
| Other | 0.00 | #DIV/0! |
| Other | 0.00 | #DIV/0! |
| Subtotal Benefit Hours | 0 | |
| Principal | 40.00 | #DIV/0! |
| Adj Principal +/- A/C Money | 0.00 | |
| Net Principal | $0.00 | |
| 10% Del. Assessment | $0.00 | |
| Interest | $0.00 | |
| Total Due | $0.00 | |

**No Findings**

1/31/2002

## Audited Hours Reconciled to Benefits Purchased

Employer's Name  Three Guys Floor Covering Workroom, Inc.
Account #  1IP-14680

| Stamp Year | Account Number | Hours Audited | Total Stamps Purchased | Less Stamps Refunded | Less Submitted For Refund | Less Stamp Inventory | Net Stamps Distributed | Direct Payments (In hours) | Total Hours Purchased | Difference | Rate Per Hour | Total Due Funds |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/1/2000 | 1-14680 | 2294.00 | 1762.00 | 0.00 | 0.00 | 0.00 | 1762.00 | 532.00 | 2294.00 | 0.00 | $21.61 | $0.00 |
| 7/1/2000 | 1-14680 | 2643.00 | 2601.00 | 0.00 | 0.00 | 0.00 | 2601.00 | 42.00 | 2643.00 | 0.00 | $22.37 | $0.00 |
| 1/1/2001 | 1-14680 | 3564.00 | 3378.00 | 0.00 | 0.00 | 0.00 | 3378.00 | 186.00 | 3564.00 | 0.00 | $22.57 | $0.00 |

Total   $0.00

**Company** Three Guys Floor Covering Workroom Inc.
**Account#** 13FI-8669
**Period** 01/20/00 to 06/30/2000

Journeymen

| Last Name | Initial | Soc Sec Num | 1/6 | 1/13 | 1/20 | 1/27 | 2/3 | 2/10 | 2/17 | 2/24 | 3/2 | 3/9 | 3/16 | 3/22 | 3/29 | 4/6 | 4/13 | 4/20 | 4/27 | 5/4 | 5/11 | 5/18 | 5/25 | 6/1 | 6/8 | 6/15 | 6/22 | 6/29 | 6/30 | Audited Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annulato | V | 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 | 16 | | | | | | | | | | | | | | | | | | | | | | | | | 16 | | 32.00 |
| Baker | G | 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 | | 14 | | | | | | 24 | 24 | 24 | 24 | 24 | 24 | 14 | | 24 | 14 | 24 | 24 | 24 | 21 | 21 | 21 | 21 | 14 | | | 413.00 |
| Carbola | B | 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 | 14 | | | | | | | 21 | 21 | 21 | 21 | 21 | 21 | 14 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | | | 93.00 |
| Cherniga | S | 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 | 28 | | 28 | | 28 | 21 | 28 | 21 | 28 | 21 | 28 | 28 | 14 | 28 | 14 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | | 625.00 |
| Cherny | S | 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 | | | | | | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | 14 | | 14 | | | | | | | | | | | 21.00 |
| Chiavello | M | 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 | 7 | | | | | | 7 | 7 | | 7 | 7 | 7 | | 7 | | 7 | | | | | | | | | | | 164.00 |
| Decena | J | 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 | 7 | | | | | | | | | | | | | | | | | | | | 7 | 7 | 35 | 35 | 18 | | | 7.00 |
| Homburger | W | 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 | | | | | | | | | | | | | | | | | | | | | | | 14 | 14 | | | 7.00 |
| Iacono | J | 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 | | | | | | | | | | | | | | | | | | | | | | | | 28 | | | 35.00 |
| Kahill | T | 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 | | | | | | | | | | | | | | | | | | | | 7 | 7 | 7 | 35 | 18 | | | 19.00 |
| Kahn | C | 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 | | | | | | | | | | | | | | | | 21 | | | 21 | 28 | 28 | 7 | | | | | 7.00 |
| Machenri | A | 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 | 31 | | | | | | | | 14 | | 14 | 14 | 31 | | 14 | 14 | 21 | 11 | 28 | 28 | 28 | 28 | 21 | 21 | | | 160.00 |
| Pasandrew | R | 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 | | | | | 14 | | 7 | 7 | 28 | 18 | 7 | 7 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 18 | | | 162.00 |
| Rodriquez | E | 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 | 14 | | | | | | 14 | | 14 | | 14 | 14 | 7 | 14 | 7 | 28 | 21 | 28 | 28 | 28 | 28 | 21 | 21 | 28 | 18 | | | 440.00 |

| Total Hours Audited: | | | 63 | 70 | 0 | 0 | 42 | 0 | 0 | 77 | 66 | 84 | 70 | 77 | 112 | 105 | 49 | 110 | 105 | 105 | 21 | 131 | 180 | 200 | 203 | | 0 | | 2284.00 |

**Company:** Three Guys Floor Covering Workroom Inc.
**Account#:** IIP-14849
**Period:** 07/09/2000 to 12/31/2000

**Journeymen**

| Last Name | Initial | Soc Sec Num | 7/6 | 7/13 | 7/20 | 7/27 | 8/3 | 8/10 | 8/17 | 8/24 | 8/31 | 9/7 | 9/14 | 9/21 | 9/28 | 10/5 | 10/12 | 10/19 | 10/26 | 11/2 | 11/9 | 11/16 | 11/23 | 11/30 | 12/7 | 12/14 | 12/21 | 12/28 | 12/30 | Audited Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Baker | C | | | | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 904.00 |
| Bialas | R | | | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | | 998.00 |
| Chikerello | | | | 14 | 14 | | | | | | | | | | | | | | | | | | | | | | | | | 28.00 |
| Coleman | C | | | | | | | | | | | | | | | | | 13 | 21 | 14 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | | 233.00 |
| Owens | C | | 21 | | | | | | | | | | | | | | | | | | | | | | | | | | | 21.00 |
| Numbro | C | | 36 | 21 | | | | | | | | | | | | | | | | | | | | | | | | | | [112.00] |
| Nelson | A | | 21 | 28 | 28 | 28 | 28 | 21 | 21 | 28 | 28 | 28 | 28 | 28 | 28 | 21 | 28 | 21 | 28 | 28 | 21 | 21 | 28 | 21 | 28 | 21 | 28 | 28 | 602.00 |
| Espandrew | R | | 14 | 28 | 19 | 18 | 18 | 18 | 18 | 18 | 18 | | | | | | | | | | | | | | | | | | | 53.00 |
| Pierre | W | | 28 | 28 | 11 | 28 | 28 | 14 | 28 | 20 | 7 | | 7 | | 7 | 14 | | | | | 14 | | | | | | | | | 63.00 |
| Rodriguez | E | | | | | | | | | | | | | | | | | | | | | | | | | | | | | 434.00 |

**Total Hours Audited:** [column weekly subtotals: 42, 126, 162, 151, 168, 80, 84, 133, 133, 97, 112, 91, 98, 119, 128, 93, 106, 108, 96, 70, 84, 98, 91, 90, 99, 42, 0 ... Total 2844.00]

**Company** Three Guys Floor Covering Workroom Inc.
**Account#** 17P-144990
**Period** 01/01/2001 TO 04/30/2001

Journeymen

Audited

| Last Name | Initials | Soc Sec Num | 1/4 | 1/11 | 1/18 | 1/25 | 2/1 | 2/8 | 2/15 | 2/22 | 3/1 | 3/8 | 3/15 | 3/22 | 3/29 | 4/5 | 4/12 | 4/19 | 4/26 | 5/3 | 5/10 | 5/17 | 5/24 | 5/31 | 6/7 | 6/14 | 6/21 | 6/28 | 6/30 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Galloway | G | | 21 | 20 | 20 | 20 | 24 | 21 | 21 | | 21 | 21 | 21 | | | | | | | 28 | 21 | 21 | 28 | 28 | 28 | | | | | 622.00 |
| Bellford | S | | | | | | | | | | | | | | | | | | | | | | | | | | | | | 133.00 |
| Casto | | | | | | | | 21 | | | | | | | | | | | | | | | | | | | | | | 21.00 |
| Casto | | | | | | | | | | | | | | | | | | | | 28 | | | | | | | | | | 28.00 |
| Chase | R | | | | | 14 | 7 | 7 | | | | 7 | | | | | | | 28 | 7 | | | | 7 | | | | | | 111.00 |
| Chiarello Jr. | R | 18 | | 28 | 21 | 16 | | | | | 14 | | | | | | | | 28 | 28 | 20 | 20 | 42 | 35 | 28 | | | | 462.00 |
| Coleman | C | | | | | | | | | | | | | | | | | | | | 21 | 28 | 28 | 42 | 38 | | | | | 548.00 |
| Cheng | C | | | | | | | | | | | | | | | | | | | | | | | 35 | 35 | 35 | | | | 600.00 |
| DeBlasio | K | | | | | | | | | | | | | | | | | | | | | | | 14 | 35 | 35 | | | | 161.00 |
| DeBlasio | | | | | | | | | | | | | | | | | | | | | 21 | 28 | 35 | 33 | 33 | | | | | 194.00 |
| Dhennen | | | | | | | | | | | | | | | | | | | | | | 14 | | | | | | | | 58.00 |
| Green | | 14 | 21 | 28 | 28 | 21 | 21 | 28 | | | 7 | | 21 | 20.8 | | 28 | 31 | 28 | 28 | 14 | 28 | | | | | | | 537.00 |
| Gonzalez | | | | | | | | | | | | | | | 28 | 20 | 28 | 20 | 26 | 16 | | | | | | | 104.00 |
| Melchiori | A | | | | | | | | | | 28 | | | | | | | | | | | | | | | | | | | 140.00 |
| Pannacciree | S | | | | | | | | | | | | | 7 | | | | | | | | | | | | | | | | 15.00 |
| Plum111 | D | | | | | 14 | | | | | | | | | | | | | 21 | 28 | 35 | | | | | | | | | 154.00 |
| Rogers | S | | | | | | | | | | | | | | | | | | | 35 | 33 | | | | | | | | | |
| Rogers | L | | 14 | 14 | 14 | | | | | | | | | | | | | 28 | 28 | 35 | 38 | 35 | | | | | | | 147.00 |
| Stokes | L | | | | | | | | | | | | | | | | | | | 21 | | | | | | | | | | |
| Trumbo | L | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **Total** | | | 63 | 112 | 56 | 91 | 100 | 28 | 140 | 91 | 105 | 84 | 0 | 84 | 99 | 84 | 74 | 169 | 217 | 336 | 434 | 375 | 360 | | 0 | | | | | 3564.00 |

Company: Three Guys Floor Covering Workroom Inc.
Account#: UP-14660
Period: 01/01/2008 to 06/30/2008

Apprentices

| Last Name | Initial | Soc Sec Num | 1/1 | 1/8 | 1/15 | 1/22 | 1/29 | 2/5 | 2/12 | 2/19 | 2/26 | 3/4 | 3/11 | 3/18 | 3/25 | 4/1 | 4/8 | 4/15 | 4/22 | 4/29 | 5/6 | 5/13 | 5/20 | 5/27 | 6/3 | 6/10 | 6/17 | 6/24 | 6/30 | Audited Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

NO WORK REPORTED DURING THIS PERIOD

Totals: 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0 0

**Company** Three Guys Floor Covering Workroom Inc.
**Account#** UPI-74880
**Period** 07/01/2006 to 12/31/2006

**Apprentices**

| Last Name | Initial | Soc Sec Num | 7/1 | 7/8 | 7/15 | 7/22 | 7/29 | 8/5 | 8/12 | 8/19 | 8/26 | 9/2 | 9/9 | 9/16 | 9/23 | 9/30 | 10/7 | 10/14 | 10/21 | 10/28 | 11/4 | 11/11 | 11/18 | 11/25 | 12/2 | 12/9 | 12/16 | 12/23 | 12/30 | Audited Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

NO WORK REPORTED DURING THIS PERIOD

Total Hours Audited:

**Company:** Three Guys Floor Covering Workcomm Inc.
**Account#:** UPJ-46643
**Period:** 06/01/2001 TO 06/30/2001

Apprentices

| Last Name | Initial | Soc. Sec. Num | 1/1 | 1/8 | 1/16 | 1/22 | 1/29 | 2/5 | 2/12 | 2/19 | 2/26 | 3/5 | 3/12 | 3/19 | 3/26 | 4/2 | 4/9 | 4/16 | 4/23 | 4/30 | 5/7 | 5/14 | 5/21 | 5/28 | 6/4 | 6/11 | 6/18 | 6/25 | Audited Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

NO WORK REPORTED DURING THIS PERIOD

# NEW YORK DISTRICT COUNCIL OF CARPENTERS

UNION
TRUSTEES

Michael J. Forde
Chairman
Peter Thomassen
Denis Sheil III
Lawrence D'Errico
Christopher Wallace
Vincent Alongi

MANAGEMENT
TRUSTEES

Joseph Olivieri
Co-Chairman
George Greco
Richard Harding
Michael Mazzucca
David Meberg
Paul O'Brien

## BENEFIT FUNDS

Stuart R. GraBois
Executive Director

395 Hudson Street
New York, N.Y. 10014   **April 30, 2003**
Telephone: (212) 366-7300
Fax: (212) 366-7444

Three Guys Floor Covering Workroom Inc.
545 Eight Avenue; 8th Floor
New York, NY, 10018

RE:   Delinquency in Fringe Benefit Contributions for the period of 7/1/2001 to 06/30/2002

Dear Sir/Madam:

Enclosed are the results of the audit of the books and records of the above named company for the period indicated as performed by Abrams, Herde and Merkel, CPAs for the New York District Council of Carpenters Benefit Funds ("Funds"). The enclosed audit report indicates a delinquency in fringe benefit contributions in the amount of $391.51. Also send a separate check for the Promo Fund, $4.06.

**IMPORTANT NOTICE:** If this audit is paid within fourteen (14) days of the date of this letter, there will be no delinquency assessment charge of $66.64. If payment is made after 14 days, kindly include the delinquency assessment of $66.64 with your payment. Also, daily interest at 12% per annum will be charged and added to any amounts due.

If you agree with the findings of the enclosed audit, you must pay the delinquent fringe benefit contributions within fourteen (14) days of the date of this letter. Mail your check, made payable to "NYDCC Benefit Funds", to Abrams, Herde and Merkel, CPAs at 2001 Marcus Avenue, Suite S 90, Lake Success, NY 11042. Telephone: (516) 488-5996.

If you dispute the findings of this audit, you must respond within fourteen (14) days of the date of this letter by submitting detailed exceptions to Abrams, Herde and Merkel, CPAs at the address listed above. Your exceptions will be reviewed and a response given to you shortly thereafter. At that point, immediate payment of any delinquencies will be required.

If you do not have the ability for an immediate payment and need a payment plan, please contact Charles A. Poekel, Esq. of the Legal Department of the Funds at (212) 366-7474. Please be aware that any payment plan is strictly subject to approval by the Delinquency Committee or the Board of Trustees.

If you fail to pay the delinquent fringe benefit contributions within fourteen (14) days from the date of this letter and have not submitted your exceptions to our CPAs within that time, the Funds may institute suit in Federal Court or commence an arbitration proceeding to collect the amount due and the additional damages to which they are entitled under the Employee Retirement Income Security Act, including (i) liquidated damages, (ii) interest imposed by statute, (iii) attorney's fees, and (iv) court costs. Also, the Funds may seize without further notice to you any surety your company may have posted, in which event your company may no longer be in compliance with its existing contract.

Your prompt attention to this matter is strongly urged.

Very truly yours,

Stuart R. GraBois,
Executive Director

cc: Abrams, Herde and Merkel, CPAs     N. Sandy
    C. Poekel, Esq.     R. Shaw

| | | | |
|---|---|---|---|
| **Employer** | Three Guys Floor Covering Workroom Inc. | | |
| **Address** | 545 Eighth Avenue; 8th Floor, New York, NY 10018 | | |
| **Mail Recap To** | Same as above | | |
| **Telephone #** | 212-244-0004 | **Fax #** | 212-244-0005 |
| **Contact** | Robert Gonzalez | **Position** | Vice President |
| **Principal(s)** | Salvatore Piccarillo | **Position** | President |
| **Audit Period** | 7/1/2001 TO 6/30/2002 | **Acct(s)** | S/P - 14680 |

| Agreement | Period(s) | | |
|---|---|---|---|
| Independent Resilient Floor | 7/1/1996 To 06/30/2001 (w/compliance) | | |
| — | — To — | | |
| — | — To — | | |
| **Surety Information** | **Effective** | **Expiration** | |
| $5,000 CD | — To — | | |
| — | — To — | | |



| | |
|---|---|
| **Principal** | $333.20 |
| **Interest** | $8.31 |
| **Sub Total (if paid within 14 days)** | $391.51 |
| **20% Del Assessment** | 66.64 |
| **Total Due (if paid after 14 days)** | $458.15 |
| **Prior Audit Balance** | - |
| **Subsequent Audit Balance** | - |
| **Total Due - All Outstanding Audits** | $458.15 |

A.J.R.E.I. In Lieu of Flooring

| | | |
|---|---|---|
| **Balance Due-Current Audit** | $ | 4.06 |
| **Prior Audit Balance** | | - |
| **Subsequent Audit Balance** | | - |
| **Total Due** | $ | $4.06 |

4/30/2003

Analysis of Findings

**Employer:** Three Guys Floor Covering Warehouse Inc.
**Audit Period:** 7/1/2001 TO 6/30/2002
**Account #:** 

| | | |
|---|---|---|
| Contract Type | B | |
| Benefit Rate | 23.60 | |
| Interest Rate | 0.17500 | |
| Benefit Period | 7/1/2001 | |

| | | | | | | | Current Amt In Dollars |
|---|---|---|---|---|---|---|---|
| Insufficient Benefit Purchases | 14 | | | | | | 333.20 |
| Shop Stewards Reports | | | | | | | 0.00 |
| Non-Union Employees | | | | | | | 0.00 |
| Non-Union Subcontractors | | | | | | | 0.00 |
| Principal(s) Officers | | | | | | | 0.00 |
| Unverified Jurisdiction | | | | | | | 0.00 |
| Unverified Trades | | | | | | | 0.00 |
| Non-Union Operation | | | | | | | 0.00 |
| Unemployed Apprentice | | | | | | | 0.00 |
| Rate Differential | | | | | | | 0.00 |
| Other | | | | | | | 0.00 |
| Subtotal Benefit Hours | 14 | 0 | 0 | 0 | 0 | 0 | 0 |

| | |
|---|---|
| Principal | $333.20 |
| Adj Principal +/- AIC Money | $0.00 |
| Net Principal | $333.20 |
| 20% Del. Assessment | $66.64 |
| Interest | $66.31 |
| **Total Due** | **$466.15** |

4/0/2003

**EMPLOYER:** Three Guys Floor Covering Workroom Inc.
**ACCOUNT NO:** S/P - 14680
**PROMOTIONAL FUND:** A.J.R.E.I. In Lieu of Flooring

| PERIOD | PROMO TYPE | HOURS DUE | RATE @ HOUR | AMOUNT DUE |
|--------|-----------|-----------|-------------|------------|
| 7/1/2001 | A.J.R.E.I | 14.00 | $0.29 | $4.06 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

|  |  |  |
|--|--|--|
| SUBTOTAL | $ | 4.06 |
| ON ACCOUNT: | | $0.00 |
| TOTAL: | $ | 4.06 |

Three Guys Contracting Workforce Inc

Company
Three Days Covering Wholesomen Inc
#(NP)-144##0
01/00/2002 TO 08/00/2002

Adjustments

| Seal Name | Soc-Sec Num | 1/3 | 1/10 | 1/17 | 1/24 | 1/31 | 2/7 | 2/14 | 2/21 | 2/28 | 3/7 | 3/14 | 3/21 | 3/28 | 4/4 | 4/11 | 4/18 | 4/25 | 5/2 | 5/9 | 5/16 | 5/23 | 5/30 | 6/6 | 6/13 | 6/20 | 6/27 | Audited Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Page 4 of 6

| Company account # sub-d | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Three Days Covering Workroom Inc
NMPL-04649
J751B0C4 YTD 1/21/28x91

Apprentice

| Emp Name | Soc Sec Num | 7/8 | 7/12 | 7/19 | 7/25 | 8/2 | 8/9 | 6/16 | 6/23 | 6/30 | 9/6 | 9/13 | 9/20 | 9/27 | 10/04 | 10/11 | 10/18 | 10/25 | 11/1 | 11/8 | 11/15 | 11/22 | 12/5 | 12/13 | 12/20 | 12/27 | Audited Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LEZAMA, GARY | 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 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 16.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 16.0 | 0.0 | 16.00 |
| LEANDER, TREVOR | 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 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.00 |
| Totals | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 16.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 16.0 | 0.0 | 32.00 |

Company
Account #
Period
Three Guys Covering Workforcom Inc
1100's 14030
01/07/2002 TO 04/30/2002

Apprentice

Last Name | Soc Sec Num | 8/3 | 8/10 | 8/7 | 8/24 | 8/31 | 9/7 | 9/14 | 9/21 | 9/28 | 9/7 | 9/14 | 9/21 | 9/28 | 4/4 | 4/11 | 4/18 | 4/25 | 5/2 | 5/9 | 5/13 | 5/23 | 5/30 | 6/6 | 6/13 | 6/23 | 6/27 | 10/31 | Audited Total
---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---
| | | | | | | | | NO WORK DONE DURING THIS PERIOD. | | | | | | | | | | | | | | | | | | | 0.00
| | | | | | | | | | | | | | | | | | | | | | | | | | | | 0.00
| | | | | | | | | | | | | | | | | | | | | | | | | | | | 0.00
| | | | | | | | | | | | | | | | | | | | | | | | | | | | 0.00
| | | | | | | | | | | | | | | | | | | | | | | | | | | | 0.00
| | | | | | | | | | | | | | | | | | | | | | | | | | | | 0.00
| | | | | | | | | | | | | | | | | | | | | | | | | | | | 0.00
| | | | | | | | | | | | | | | | | | | | | | | | | | | | 0.00
| | | | | | | | | | | | | | | | | | | | | | | | | | | | 0.00
| | | | | | | | | | | | | | | | | | | | | | | | | | | | 0.00
Total | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00